## 38543. TATUM v. THE STATE.

WELTNER, Justice.

Tatum and co-defendant, Edwards, were tried jointly for the murder of Bill Roberts. Tatum was found guilty of murder and received a sentence of life imprisonment.[1] Tatum alleges on appeal that the admission into evidence of an out-of-court statement given to the police by Edwards violated Tatum's right of confrontation under the Sixth Amendment, citing Bruton v. United States, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Tatum also complains of the admission into evidence of certain photographs of the deceased alleged to be repetitious, prejudicial and of no probative value. Finally, Tatum contends that the evidence was insufficient to support a conviction for the crime of murder, citing Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The body of the victim was found floating in Lake Lanier on the morning of June 8, 1981. The autopsy report established multiple contusions and abrasions about the head and body, and gave the

---

[1] Edwards received a sentence of five years for involuntary manslaughter.

cause of death as drowning. Tied around the neck of the victim was a red shirt which was later shown to have been worn by Edwards on the previous day.

Both defendants made out-of-court statements to police officers and these statements were admitted at trial. Edwards' statement was offered only against Edwards, and the jury was instructed that ". . . a statement made by a defendant may be used only against the defendant who gave the statement and can not be considered as evidence of a co-defendant's guilt." Neither defendant took the stand at trial.

Tatum's statement to the police indicated the following: Early in the evening of June 7, Tatum picked up the victim in Tatum's car. He and the victim drove around in search of a bootlegger, eventually obtained liquor, and then continued to drive around, drinking the liquor. On at least one occasion they parked the car for a period of time. At about midnight they drove to the house of Edwards and picked him up. The threesome then drove the car to a spot near the shore of Lake Lanier, known as Peck's Bridge, and parked. "I went and picked up Donald Edwards and we all went to Peck's Bridge and parked and Bill [the victim] started calling me a queer and everything. I told him I wasn't and so he kept on and kept on and I got mad and I hit him and Donald jumped in and we thought he — we killed him. So we went and put him in the water to get rid of the body." Tatum also stated that during the fracas Edwards pulled his shirt off and tied it around the victim's head.

Edwards' statement indicated that Tatum and the victim picked him up at his home between 11:30 p.m. and midnight and all three drove to a park. The victim called Tatum a faggot and Tatum vigorously denied the charge. Tatum grabbed the victim's head and thrust it into his lap, daring the victim, in extremely vulgar terms, to perform a homosexual act. Tatum then tried to get the victim out of the car, threatening to beat him up, but the victim refused. Tatum slammed the car door on the victim's legs, returned to the driver's seat, and drove to Peck's Bridge. While Edwards remained in the car Tatum and the victim walked to a picnic table. "I was sitting up there in the car, rolling up some joints and seen that old man [the victim] fall off the table and then Charlie [Tatum] went around there. I reckon they was fighting and Charlie knocked him off or something. Then a few minutes later they went down towards the lake." Asked how the victim got down to the lake, Edwards replied, "I reckon Charlie drug him down there." Tatum returned to the car alone and he and Edwards left.

(1) The admission of Edwards' statement at trial was not contrary to the hearsay rule, as the jury was instructed that the

statement was to be considered only in the determination of Edwards' guilt or innocence. A crucial assumption underlying the system of trial by jury is that the jury will follow the instructions of the trial judge. Parker v. Randolph, 442 U. S. 62, 73 (99 SC 2132, 60 LE2d 713) (1979). The holding in Bruton v. United States, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), as characterized by Parker, is an exception to this general rule. See Parker, supra, at p. 75, n. 7. In Bruton, the out-of-court statement of a co-defendant was admitted at a joint trial in a case where the defendant maintained his innocence, and neither defendant took the stand. Although, as in the present case, the jury was properly instructed as to the use of the statement, the Court held that ". . . there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. [Cits. omitted]. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." 391 U. S. at pp. 135, 136. Commenting on Bruton in Parker, the Court stated: "The same cannot be said, however, when the defendant's own confession — 'probably the most probative and damaging evidence that can be admitted against him,' [cit. omitted] — is properly introduced at trial. The defendant is 'the most knowledgeable and unimpeachable source of information about his past conduct,' [cit. omitted] and one can scarcely imagine evidence more damaging to his defense than his own admission of guilt. Thus, the incriminating statements of a codefendant will seldom, if ever, be of the 'devastating' character referred to in Bruton when the incriminated defendant has admitted his own guilt. . . . The possible prejudice resulting from the failure of the jury to follow the trial court's instructions is not so 'devastating' or 'vital' to the confessing defendant to require departure from the general rule allowing admission of evidence with limiting instructions. We therefore hold that admission of interlocking confessions with proper limiting instructions conforms to the requirements of the Sixth and Fourteenth Amendments to the United States Constitution." 442 U. S. at pp. 72-73, 74.

We conclude that the present case falls squarely within the holding of Parker, and thus no error was committed. Tatum contends that his statement does not contain an admission to every element of the crime of murder, that it is only an incriminating statement, rather than a confession, and that therefore Parker does not apply. The opinion in Parker at one point refers to "incriminating statements" (442 U. S. at p. 73), and we have applied the rule in Parker to such

statements. *Knowles v. State,* 246 Ga. 378 (4) (271 SE2d 615) (1980). Furthermore, a statement of a defendant in a criminal case will rarely contain direct admissions to each and every element of the offense with which he is charged. We interpret Parker to require only that the confessions or incriminating statements of co-defendants be interlocking to a substantial degree. Juries are expected to heed limiting instructions, and slight disparities in the statements of co-defendants rarely, if ever, will be so prejudicial as to require exclusion under the Bruton rule.

(2) Tatum complains of the admission into evidence, over objection, of 13 photographs of the victim's body on the ground that they were duplicitous, cumulative, inflammatory and prejudicial. The photographs were relevant to show the condition of the body and the clothing found on the body. "They were not unduly gruesome, and the fact that they were somewhat repetitive and that in some the body had been moved, will not alone rule them out." *Mooney v. State,* 243 Ga. 373 (6) (254 SE2d 337) (1979). At the same time, we reiterate the warning of now Chief Justice Jordan in *Florence v. State,* 243 Ga. 738, 741, n. 1 (256 SE2d 467) (1979): "The use of photographs should be limited to only those which are relevant and illustrative of the issues."

(3) The statement of Tatum, together with other corroborating circumstances, and excluding the statement of Edwards, was amply sufficient to enable a rational trier of fact to determine beyond a reasonable doubt that Tatum committed the crime of murder. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 25, 1982.

*Lawson, Brown & Hartness, Michael E. Neidenbach,* for appellant.

*Jeff C. Wayne, District Attorney, Bruce L. Udolf, Assistant District Attorney, Michael J. Bowers, Attorney General,* for appellee.