### 64873. YEARGIN v. THE STATE.
### 64874. WHITE v. THE STATE.

BANKE, Judge.

The appellants, Ruby Yeargin and Betty White, were jointly convicted of conspiracy to murder Jo Ann Cleary. They appeal the denial of their separate motions for new trial.

The state's evidence showed that Betty White approached Detective Jones of the Douglas, Georgia, Police Department on May 29, 1981, asked if he knew anyone who "could do a job on somebody . . .," and told him that "she wanted this person to go on a trip of no return, kind of a permanent disappearance." As their conversation progressed, Ms. White indicated that she was seeking the information for a friend. Jones told her that he might know someone and agreed to get back in touch with her. Three days later, on June 1, 1981, Ms. White telephoned Jones at his office to ask if he had learned anything, and Jones responded that he had contacted a man who would do "that kind of work." Acting in accordance with directions from the G.B.I., Jones further told her that she and her friend would have to put up $500 to get an appointment with this person. The next

day, Ms. White informed Jones that the money had been wired to her from Chattanooga, and the two made arrangements to meet at a restaurant the next day. At this meeting, she handed Jones an envelope containing five one-hundred dollar bills, and was informed that the fee for the job would be $5,000, with $2,500 payable in advance. The next day, Ms. White visited Jones at his office and was instructed by him to tell her friend to go to a certain motel at 2:00 p.m. on June 5 and ask for a Mr. Richards. Jones testified that Ms. White never revealed to him the name of the person to be killed but told him only that it was her friend's son's girl friend.

On June 5 at about noon, G.B.I. agent John Lang went to the motel and registered in Room 305 under the name John Richards. Several other agents accompanied him, installing recording and transmitting equipment in his room and setting up a listening post in the room next door. While they were installing the equipment, Ms. Yeargin telephoned the room, identified herself by the prearranged code name "Rachel Smith," and asked for Mr. Richards. Lang told her to wait ten minutes and then come up.

Upon her arrival, Mrs. Yeargin told Lang that her son was engaged or possibly married to a girl named Jo Ann Cleary and that she wanted this person "done away with." She gave him a physical description of the girl, along with a map showing the location of the couple's house and their place of employment, and told him, in Lang's words, that "if I needed to burn the house down that I could very well do that, that the house was fully insured . . ." Finally, she gave him $2,500 in one-hundred dollar bills and told him he would receive the remaining $2,500 upon completion of the killing. Ms. Yeargin was arrested immediately after she left the room. A Western Union telegraphic money order receipt dated June 2, 1981, in the amount of $500, naming her as the sender and Betty White as the payee, was seized from her purse in a search incident to the arrest. Both women later made written, incriminatory statements to police. *Held:*

1. The evidence was amply sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that the appellants were guilty of conspiracy to murder Jo Ann Cleary. See generally *Crawford v. State,* 245 Ga. 89 (1) (263 SE2d 131) (1980). It follows that the trial court did not err in failing to direct a verdict of acquittal or in failing to grant the motion for new trial on the general grounds.

2. "While it may generally be the better practice to require a prima facie case of conspiracy first to be made, before admitting evidence of the acts and declarations of one of the alleged conspirators, there is no inflexible rule to that effect. The trial court has some discretion as to the order in which testimony may be

introduced; and if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such testimony is not error." *Coleman v. State,* 141 Ga. 731, 733 (2) (82 SE 228) (1914). See also *Hutchins v. State,* 229 Ga. 804 (1) 805-806 (194 SE2d 442) (1972); *Fallings v. State,* 232 Ga. 798 (1), 799 (209 SE2d 151) (1974); *Knight v. State,* 239 Ga. 594 (2), 596 (238 SE2d 390) (1977).

3. The trial court did not commit reversible error in charging the jury that to support a conviction based on circumstantial evidence, the proven facts must "include," rather than exclude, every other reasonable hypothesis except that of the accused's guilt. The court went on to charge as follows: "To sustain a conviction on circumstantial evidence, it is not required that the evidence exclude every possibility or inference that may be drawn from proven facts. It is only necessary to exclude reasonable inferences and reasonable hypotheses which may be drawn from all the facts and circumstances surrounding the case as you find them to be." Taken in context on the entire charge, the court's initial slip of the tongue could not have misled or confused the jury to the prejudice of the appellants. See generally *Griffis v. State,* 242 Ga. 26 (2) (b) (247 SE2d 833) (1978); *Gary v. State,* 150 Ga. App. 201 (257 SE2d 344) (1979). The likelihood of prejudice is particularly remote in light of the fact that the circumstantial evidence charge could have been omitted altogether since the state's case was not totally dependent on circumstantial evidence. See generally *DePalma v. State,* 228 Ga. 272 (1) (185 SE2d 53) (1971); *Bryant v. State,* 229 Ga. 60 (1) (189 SE2d 435) (1972).

4. The court did not violate the appellants' constitutional rights in admitting the statements which they made to police subsequent to their arrest, although neither of the women testified at trial, and each implicated the other in her statement. "[W]here the testimony presented in the co-defendant's confession is supported by the complaining defendant's own confession, there is no violation of appellant's right of confrontation. [Cits.]" *Butler v. State,* 156 Ga. App. 89 (2) (274 SE2d 104) (1980). See generally Parker v. Randolph, 442 U. S. 62 (99 SC 2132, 60 LE2d 713) (1979); *Tatum v. State,* 249 Ga. 422 (291 SE2d 701) (1982); *Fortner v. State,* 248 Ga. 107 (1) (281 SE2d 533) (1981); *Casper v. State,* 244 Ga. 689 (1) (261 SE2d 629) (1979).

### Case No. 64873

5. When appellant Yeargin's daughter was asked to describe her mother's feelings towards Jo Ann Cleary, the state objected, and the trial court ruled as follows: "I sustain you. Disregard that, ladies and gentlemen. She can't testify as to what her mother feels. Her mother is sitting right over there. If she wants to get on the stand and say how she feels, she can. We are getting a little far afield now." The

appellant objected and moved for a mistrial on the ground that this constituted an improper comment on her opportunity to testify, whereupon the court instructed the jury at length that the state had the burden of proof and that no unfavorable inference could be drawn from the appellant's failure to testify, should she in fact fail to testify. The appellant did not renew her motion for mistrial or ask for further curative instructions. It follows that the denial of the motion cannot now be enumerated as error. See *Cherry v. State,* 220 Ga. 695 (5), 697 (141 SE2d 412) (1965); *Whitley v. State,* 158 Ga. App. 618 (3) (281 SE2d 637) (1981).

6. Yeargin further contends that the tape recording of her conversation with agent Lang in the motel room was inadmissible because a copy was not furnished to her counsel within 10 days of trial in accordance with Code Ann. § 27-1302. However, we are cited to no such objection in the transcript. See generally *Price v. State,* 142 Ga. App. 504 (2) (236 SE2d 178) (1977); *Goldsmith v. State,* 148 Ga. App. 786 (8) (252 SE2d 657) (1979). Furthermore, § 27-1302 (a) applies only to statements given by the defendant "while in police custody," and the statements made by Ms. Yeargin in the motel room prior to her arrest cannot reasonably be categorized as custodial in nature. Compare *Walraven v. State,* 250 Ga. 401 (297 SE2d 278) (1982).

7. Having herself requested that Code Ann. § 26-902 be charged, the appellant cannot now complain that the court erred in charging subsection (b) of the statute as well as subsection (a). "It is generally held that it is not usually cause for a new trial that the court gives in charge an entire statutory or Code provision where a part thereof is applicable to the case, even though a part may be inapplicable under the facts in evidence. *Thompson v. Mitchell,* 192 Ga. 750 (2) (16 SE2d 540); *Pippin v. State,* 205 Ga. 316 (9) (53 SE2d 482)." *Highland v. State,* 127 Ga. App. 518, 519 (194 SE2d 332) (1972).

8. Although several times during the trial the court charged the substance of Code § 38-414, regarding the inadmissibility of statements made by a co-conspirator against another co-conspirator after the conspiracy has terminated, the appellant contends that she is entitled to a new trial because the code section was omitted from the final charge to the jury. No request for such a charge was made. "'While present law exempts the defendant in a criminal case from the strict requirements imposed on litigants in civil cases to preserve an issue on the giving of or the failure to give instructions to the jury (Ga. L. 1968, pp. 1072, 1078; Code Ann. § 70-207) this does not relieve him from the necessity of requesting instructions . . . except in those circumstances where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence.' *Spear v. State,* 230 Ga.

74, 75 (195 SE2d 397) (1973)." *Aldridge v. State*, 236 Ga. 773, 776 (225 SE2d 421) (1976). The court's failure to charge the substance of § 38-414 one final time does not fall in this category. This is particularly true in light of the fact that the statements made by the appellants were mutually reinforcing.

9. None of the charges characterized as burden shifting were, in fact, burden shifting in the slightest.

### Case No. 64874

10. The trial court did not abuse its discretion in concluding that appellant White's confession was freely and voluntarily made. The officer who took the statement testified without contradiction that although Ms. White initially declined to make any statement without her attorney present, she later notified him by telephone that she wanted to see him. He stated that when he arrived at the jail in response to this call, he again advised her of her Miranda rights, and she expressly stated that she wanted to talk without her attorney present. The trial judge was authorized to conclude from this testimony that the appellant acted on her own initiative rather than in response to an unlawful interrogation conducted after she had asked to see an attorney. Compare *Vaughn v. State*, 248 Ga. 127 (281 SE2d 594) (1981). Accord *Pierce v. State*, 235 Ga. 237 (219 SE2d 158) (1975).

11. The trial judge did not express an opinion as to Ms. White's guilt or innocence when, in reference to her statement to police, he instructed the jury that no "incriminatory statement made by one of the co-defendants against the other would be admissible . . ." The court was clearly referring to those portions of Ms. White's statement which were incriminatory towards Ms. Yeargin, rather than those portions which were self-incriminatory. Furthermore, the jury could not reasonably have interpreted Ms. White's statement as being anything other than incriminatory, and the instruction consequently could not have harmed her.

12. The court did not err in denying a motion for severance or for mistrial made in response to a psychiatrist's testimony that Ms. Yeargin had told him she felt Ms. White wanted to blackmail her. No objection was made to the testimony at the time it was offered, but counsel (different from Ms. White's additional appellate counsel) instead waited until the witness had been excused and then made his motions. The court promptly instructed the jury that the testimony was not admissible against Ms. White and that they could not consider it in determining her guilt or innocence. The court then inquired of counsel, "You will renew your objections, I guess?" and counsel responded, "Yes."

"This court has held: 'When a motion for mistrial is made and the trial court instructs the jury not to consider the alleged error upon which the motion is based, and counsel neither requests further instructions nor renews the motion for mistrial, the assignment of error based on the denial of the motion for a mistrial is without merit.' *Kendrick v. Kendrick,* 218 Ga. 460 (4) (128 SE2d 496)." *Cherry v. State,* 220 Ga. 695 (5), 697, supra. Counsel's affirmative response to the court's inquiry as to whether he wished to renew his "objections" cannot be considered either a request for further instructions or a renewal of the motion for mistrial. Furthermore, as previously indicated, counsel did not interpose any objection to the testimony at the time it was offered but instead chose to allow the subject to be discussed thoroughly. By failing to enter an objection at the earliest available opportunity, counsel waived his right to seek a mistrial. See *Cape v. State,* 246 Ga. 520, 524 (5) (272 SE2d 487) (1980); *Barreto v. State,* 123 Ga. App. 117 (179 SE2d 650) (1970). Finally, in light of the overwhelming evidence of guilt and the curative instructions given by the trial court, it is highly probable that the psychiatrist's testimony did not contribute to the jury's finding that Ms. White was guilty.

13. The trial judge did not express an opinion as to whether a crime had in fact been committed when he charged the jury that conspiracy was a crime under the law of this state, nor did he express any opinion when he charged that the burden is on the state "to prove each element of the crime and every material allegation in the indictment." From the context in which the instructions were given, it is quite clear that the court was merely discussing the nature of the charge for which the appellants were on trial and the burden of proof required for conviction. Compare *Phillips v. State,* 131 Ga. 426 (1) (62 SE 239) (1908); *Carter v. State,* 34 Ga. App. 581 (1) (129 SE 798) (1925). Accord *Wilson v. State,* 190 Ga. 824 (7) (10 SE2d 861) (1940).

14. The court did not err in charging the jury that if a conspiracy was established beyond a reasonable doubt, each conspirator was deemed responsible for the declarations and conduct of the others in accomplishing the conspiracy. See generally *Ethridge v. State,* 163 Ga. 186 (11) (136 SE 72) (1926); *Tate v. State,* 41 Ga. App. 300 (5) (152 SE 609) (1930).

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

Decided December 3, 1982 —
Rehearing denied December 16, 1982.

*Hylton B. Dupree, Jr., Stephen C. Steele, Joseph T. Tuggle, Jr.,*

for appellant (case no. 64873).

*Emory Walters, J. Laddie Boatright,* for appellant (case no. 64874).

*Thomas J. Charron, District Attorney, Joseph L. Chambers, Assistant District Attorney,* for appellee.