A95A0660. SAWYER et al. v. THE STATE.
(457 SE2d 685)

McMurray, Presiding Judge.

Tony Sawyer and Warnell Jones were jointly charged with kidnapping with bodily injury, rape, aggravated sodomy, armed robbery, theft by taking, and terroristic threats. The evidence at their joint trial, including the signed confession of each, showed that on the evening of November 7, 1985, the victim was employed as a cashier at the "Time Saver #17 on [Highway] 46 . . . where the paved road known as Old Register Road comes down and dead ends there as far as pavement is concerned . . . at 46." She closed the store at 10:00 p.m. and "got out of there at 10:30." As she approached her truck, "somebody jumped . . . out from around the other side and told me not to move or anything." He was short and had a pistol. He wore a ski mask and told the victim "not to holler or he would shoot [her]." He took her pocketbook and, "[holding] the gun on [her], [he] took [her] around the building and made [her] sit down." The victim saw "another guy standing over there." He was tall and after the short one apparently gave the victim's pocketbook to the tall one, the tall one "went up front where the light was and took everything out [of her purse] . . . [including] almost $13.00 in fifty cent pieces." The short one "kept telling [the victim] to keep [her] head down. And he stood there and [held] the gun on [the victim]." They then ordered her "to come around the building, and . . . put [her into her] truck. The perpetrators wanted money. The victim told them that if they were to attempt to go back into the store it would "set off the alarm." The victim feared for her life because "they were talking about killing [her] between 'em. They was [sic] saying you want to kill her or not." They "pulled up in front of this big fence." The tall one ordered her to undress. When she resisted, he "stuck the gun in [her] temple, . . . and he pressed it real hard. And he says take 'em off or I'll kill you," whereupon the victim removed her clothes. The tall one had sex with her "at gun point . . . [a]nd then the short one did . . . After that [the victim attempted] to put [her] clothes back on, [but] they wouldn't let [her]. They made [her] ride just like that." They "kept telling [her] that they were with the Mafia. And that they'd kill [her], and they was [sic] talking about putting [her] on the streets in Savan-

nah. . . . [If she were] to say anything about it, they'd have somebody to kill [her], and kill [her] little girl." They stopped the truck a second time. "They made [her] lay down again, and the biggest, the tallest one went with [her] again." The tall one forced the victim to perform an act of oral sodomy and "the short one [had] sexual relations with [the victim again]. . . ." They drove around further and finally stopped and released her "beside a big house, [where] you could look up and . . . see Kentucky Fried Chicken[ . . . ] on Olliff Street[ . . . ] in Statesboro[.]" After the victim put her clothes back on, she turned right at the caution light and then drove "straight home." The victim identified State's Exhibit 1 as her gold digital watch in the form of a lock with a gold chain around it, which had been taken that night from her pocketbook. James Roshto, M. D., the "OB-GYN" from Bulloch Memorial Hospital, found a pubic hair sample "different [from that] of the alleged victim[.]" Tom McMillan, an investigator for the Bulloch County Sheriff's Department, interviewed the victim at the Bulloch Memorial Hospital Emergency Room. She appeared "very upset . . . very emotionally distraught." Investigator McMillan identified State's Exhibit 1 as a lock watch and chain that he got "off the person of [defendant] Tony Sawyer," during a custodial interview approximately nine days after the incident. Randy Smith, an acquaintance of both defendants, related a conversation amongst Tony Sawyer, Warnell Jones, and himself, whereby Tony Sawyer wanted to borrow Randy Smith's father's truck and have Randy Smith drive it to rob "the store on Old Register Road at 46." When Tony Sawyer left them to go get a gun, Randy Smith told Warnell Jones that he "wasn't gonna do it." The next day, Tony Sawyer came by Randy Smith's house and told Smith that he and Warnell Jones had "robbed the store." Warnell Jones confirmed to Randy Smith "that they did[, . . . and also that] they both raped her." Kenny Smith, a first cousin to Randy Smith, related a similar incriminating statement made to him by Warnell Jones.

The trial court eliminated the charge of theft by taking (Count 5) from consideration by the jury. As to the remaining five counts, the jury found each defendant guilty of kidnapping with bodily injury, rape, aggravated sodomy, armed robbery, and terroristic threats. Defendants' motions for new trial were denied, and a timely notice of appeal was filed. *Held*:

1. Defendants first contend that their custodial statements were admitted in violation of OCGA § 24-3-52. The record shows that in their respective custodial statements, the confessing co-defendant also implicated the other co-defendant by name and act; however, neither defendant took the stand at their joint trial and so were subject to cross-examination.

OCGA § 24-3-52 provides: "The confession of one joint offender

or conspirator made after the enterprise is ended shall be admissible only against himself." " 'Every defendant has the right under the Sixth Amendment "to be confronted with the witnesses against him." *Bruton* (*v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968)) holds that the right of confrontation is violated when several co-defendants are all tried jointly, one defendant's confession is used to implicate another defendant in the crime, and the confessor does not take the stand. The result is that the [accusing] co-defendant cannot be cross-examined by the non-confessing [co-]defendant. . . .' *United States v. Espinoza-Seanez*, 862 F2d 526, 533-534 (5th Cir. 1988)." *McDonald v. State*, 210 Ga. App. 689, 690 (2) (436 SE2d 811). However, the Supreme Court of the United States has since held that "even though a co-defendant's confession is admitted at a joint trial in violation of *Bruton*, supra, that error may be harmless. *Schneble v. Florida*, 405 U. S. 427 [(92 SC 1056, 31 LE2d 340)]." *Baker v. State*, 238 Ga. 389, 391 (2), 392 (233 SE2d 347). Consequently, the introduction of so-called interlocking confessions may render harmless any error in admitting the unredacted incriminating statement of a nontestifying co-defendant. *Tatum v. State*, 249 Ga. 422, 423 (1), 424 (291 SE2d 701). This is because " 'the incriminating statements of a co-defendant will seldom, if ever, be of the "devastating" character referred to in *Bruton* when the incriminated defendant has admitted his own guilt. . . .' [*Parker v. Randolph*, 442 U. S. 62, 73 (99 SC 2132, 60 LE2d 713)]." *Tatum v. State*, 249 Ga. 422, 424, supra.

In the case sub judice, each defendant's own custodial statement admits his own participation in the original plan to commit armed robbery which escalated into kidnapping with bodily injury, repeated rape, aggravated sodomy, and terroristic threats. In addition, that objectionable portion of each statement implicating the other co-defendant is cumulative of separate evidence that defendants bragged about their violent spree to Randy Smith and Kenny Smith. " '[T]he defendant's own confession [is] "probably the most probative and damaging evidence that can be admitted against him[.]" . . . The defendant is "the most knowledgeable and unimpeachable source of information about his past conduct," . . . and one can scarcely imagine evidence more damaging to his defense than his own admission of guilt. . . .' " *Tatum v. State*, 249 Ga. 422, 423 (1), 424, supra. In the case sub judice, the probative and damaging confessions render it highly probable that the introduction of the respective co-defendant's custodial statements implicating the other did not infect the verdicts. Consequently, any error under OCGA § 24-3-52 was plainly harmless. *Bell v. State*, 239 Ga. 146, 148 (1), 150 (236 SE2d 47); *Baker v. State*, 238 Ga. 389, 391 (2), 392, supra; *Cochran v. State*, 177 Ga. App. 471 (1), 472 (339 SE2d 749). See also *Gallman v. State*, 127 Ga. App. 849, 852 (4) (195 SE2d 187), where, even in the absence of a timely objec-

tion to the erroneous procedure of reading unredacted confessions of one co-defendant, the statements of the confessing co-defendant were held to have no probative value against the non-confessing co-defendant pursuant to OCGA § 24-3-52.

2. Defendants also contend the evidence of venue is insufficient because the State "produced no evidence to show that the crime(s) took place in the State of Georgia, and certainly not in a specific county within the State."

"Generally, criminal actions must be tried in the county where the crime was committed. OCGA § 17-2-2 (a). And, venue must be established beyond a reasonable doubt. *Adsitt v. State*, 248 Ga. 237 (282 SE2d 305) (1981). However, when the evidence is not conflicting and when no challenge to venue is raised at trial, slight evidence is sufficient to prove venue. *Jones v. State*, 245 Ga. 592 (266 SE2d 201) (1980)." *Minter v. State*, 258 Ga. 629 (1) (373 SE2d 359). "Venue for the prosecution of kidnapping with bodily injury lies in the county where the victim was seized, even though the bodily injury may have been inflicted in a different county. *Potts v. State*, 261 Ga. 716, 720 (2) (410 SE2d 89)." *Cornelius v. State*, 213 Ga. App. 766, 767 (1), 768 (445 SE2d 800).

In the case sub judice, the evidence showed that the offense of kidnapping with bodily injury was initiated at the victim's place of employment, at the intersection of Old Register Road and Highway 46. Members of the Bulloch County Sheriff's Department investigated the victim's complaint, authorizing the inference that the repeated references to streets, addresses, and families in Statesboro means they acted within their jurisdiction, Bulloch County, Georgia. *Hunter v. State*, 191 Ga. App. 219, 220 (381 SE2d 525). In the absence of conflicting evidence, these circumstances are sufficient to establish venue in Bulloch County. *Minter v. State*, 258 Ga. 629 (1), 630, supra. This enumeration is without merit.

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED MAY 8, 1995.

*Jack B. Williamson, Jr.*, for appellants.
*Rene J. Martin III, District Attorney, Martha C. Kirkland, Assistant District Attorney*, for appellee.