S98A0628. HANIFA v. THE STATE.
S98A0629. KIRK v. THE STATE.
(505 SE2d 731)

BENHAM, Chief Justice.

Appellants Kareemah Hanifa and Diana Kirk are two of the nine persons charged in a nine-count indictment in connection with the kidnapping and death of Nekita Waller, a fifteen-year-old girl.[1]

---

[23] See OCGA § 17-10-35 (c) (3).

[24] *DeYoung*, 268 Ga. at 786; *Wellons v. State*, 266 Ga. 77, 91 (463 SE2d 868) (1995).

[1] The victim was kidnapped on or about August 1, 1993, and died on or about August 3, 1993. Her body was discovered in a kudzu-covered ravine on August 16, 1993. The grand jury returned true bills of indictment against the nine co-indictees on October 5, 1993. Appellants' joint trial commenced on January 30, 1996, and concluded with the return of the jury's verdicts on February 29. The orders sentencing appellants were filed March 4, 1996.

Appellants and co-indictee Brandon Kenner were tried together; co-indictee Ahmond Dunnigan was tried separately; co-indictees Corey Lamar Gaither, Vickie Logan, and Dennis Smith McCrary each pleaded guilty to a variety of charges and testified at Hanifa and Kirk's trial. The jury returned "guilty but mentally ill" verdicts against Hanifa on seven of the nine counts, and the trial court imposed consecutive sentences of life imprisonment for malice murder and kidnapping with bodily injury. Appellant Kirk was found guilty of malice murder, felony murder/aggravated assault, and aggravated assault, and was sentenced to life imprisonment for malice murder.[2]

1. The State presented evidence that Nekita Waller's nude body, in a "very advanced" state of decomposition, was found August 16, 1993, 26 days after she had run away from home. The deputy medical examiner testified that he could discern from the remains that the victim had been burned on several areas of her body and had suffered blunt-force trauma to her head, stab wounds to her back, and a broken shoulder blade. Because of the body's decomposition, he was unable to ascertain the cause of the victim's death. A search of the apartment where the victim was alleged to have been killed uncovered an ice cooler's lid, a flyswatter, and a broom, each containing bloodstains consistent with the victim's DNA; a kitchen knife discolored and charred from exposure to extreme heat; an ice cooler, and a dented fire extinguisher.

---

Hanifa's motion for new trial, filed March 27, 1996, was denied October 22, 1997, and her Notice of Appeal was filed November 20, 1997. Kirk's motion for new trial was filed March 29, 1996, and was also denied October 22, 1997. She filed her Notice of Appeal on November 21, 1997. Both appeals were docketed in this Court on January 12, 1998. Hanifa's appeal was submitted for decision on briefs while oral argument was heard on Kirk's appeal on April 20, 1998.

[2] Hanifa was found guilty of malice murder, felony murder (aggravated assault); felony murder (kidnapping with bodily injury); kidnapping with bodily injury (death); kidnapping with bodily injury (aggravated battery); aggravated assault; and false imprisonment. The trial court determined that all the guilty verdicts "merged" into the malice murder and kidnapping with bodily injury charges, and imposed sentence on those two crimes only. The malice murder conviction resulted in the vacation by operation of law of Hanifa's two felony murder convictions. OCGA § 16-1-7. Because the indictment's malice murder count stated with specificity the means by which death occurred and that specificity was repeated in the aggravated assault charge, the latter conviction merged as a matter of fact into the malice murder conviction. The false imprisonment conviction merged into kidnapping with bodily injury (death), as did the kidnapping with bodily injury (aggravated battery). Kirk was sentenced to life imprisonment for the malice murder conviction, the felony murder conviction having been vacated by operation of law. OCGA § 16-1-7. Kirk was also given a consecutive 20-year sentence for the aggravated assault conviction. However, as was the case with Hanifa, that conviction merged into the malice murder conviction as a matter of fact because the indictment's malice murder count stated with specificity the means by which death occurred and those means were repeated in the aggravated assault charge. See *Malcolm v. State*, 263 Ga. 369, 373 (434 SE2d 479) (1993). Kirk's conviction and sentence for aggravated assault must be vacated. *Thomas v. State*, 257 Ga. 24 (4) (354 SE2d 148) (1987).

The majority of the State's case against appellants consisted of the statements each of them had given police, and the testimony and statements of those co-indictees who had pleaded guilty. The introduction of each co-defendant's statement was preceded by the trial court's instruction to the jury to limit their consideration of the statement to the case against the confessing co-defendant. Through this evidence, the jury learned that on August 1, 1993, Nekita Waller accepted the offer of a ride from several young men who did not permit her to exit the car when she ascertained they were not taking her to her destination. In a statement given to police the day before Nekita's remains were found, appellant Hanifa said that the victim had stayed with her a few days before August 1993 and had disappeared after Hanifa had given her clothing. Hanifa next saw her in early August when a co-indictee, one of the men who had given the victim a ride, presented Nekita to Hanifa at an Atlanta apartment as a "gift." Hanifa then recounted three days of physical abuse suffered by the victim: upon the victim's arrival at the apartment, Hanifa grabbed and slapped her and demanded the return of her clothing, and all the men and women in the apartment slapped and punched the victim. Hanifa stated others poured rubbing alcohol on various portions of the victim's body and set her afire, and a heated kitchen knife was used to burn the victim's feet and legs. When the men left the apartment, the females continued beating the victim. Upon the men's return, the group unsuccessfully attempted to smother the victim, with several persons holding her hands and legs while another sat on a pillow placed on the victim's face. One of the men stabbed the victim in the back with a kitchen knife. Then, the victim was held upside down by several persons and her head placed in a water-filled ice cooler, causing her to drown. The victim's body was placed in a duffle bag and taken away by several of the participants.

Appellant Kirk's statement to police, introduced at trial, was similar to Hanifa's with regard to Nekita's arrival at the apartment and the stabbing and attempted suffocation of the victim. Kirk also recalled that one of the group was thwarted in an attempt to strangle the victim when the extension cord being used broke. Kirk stated she held the victim's hand while she drowned. A visitor to the apartment who was not indicted testified that he had seen the victim, Kirk, Hanifa, and others in the apartment and that Hanifa had bragged to the visitor that she and others had beaten the victim for several hours, and had displayed to the visitor some of the injuries inflicted upon the victim. A co-indictee who had pleaded guilty to aggravated assault, testified that he saw both appellants repeatedly strike the victim. Another co-indictee who had pleaded guilty to aggravated assault testified that Hanifa had struck the victim with a stereo speaker and had set the victim on fire after pouring rubbing alcohol

on her, and that Kirk had hit the victim with a fire extinguisher. This co-indictee testified that both appellants talked of beating the victim and displayed the injuries they had inflicted upon her. In this co-indictee's statement to police, which was introduced into evidence, she related that Hanifa had held one of the victim's arms when suffocation was attempted, that Kirk had been the person who had placed a pillow over the victim's face and sat on it, and that both appellants had been holding the victim while she drowned. Yet another co-indictee, who had pleaded guilty to murder, kidnapping with bodily injury, aggravated assault and aggravated sodomy, testified that both appellants hit and kicked the victim, and that both of them stood there and watched while another co-indictee took a heated knife and burned the victim's feet and leg. The following day, according to this witness, Kirk showed the witness the injuries inflicted upon the victim in his absence when the victim had tried to leave the apartment. This witness identified Kirk and Hanifa as participants in the attempted suffocation and in the drowning, with Kirk being one of the persons holding the victim's head under water, and Hanifa holding the victim's left arm.

Pointing out that she was not present when Nekita was kidnapped by the men who gave her a ride, Hanifa contends her motion for directed verdict of acquittal on the kidnapping charges was erroneously denied. Such a motion is granted only when "there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty'. . . ." OCGA § 17-9-1 (a). As there was evidence that the victim was presented to Hanifa as a "gift," that Hanifa asserted some control of the victim by ordering her to enter the apartment, and that Hanifa participated in the repeated assaults and ultimate death of the victim after having forcibly kept the victim in the apartment, there was evidence, with all reasonable deductions and inferences drawn therefrom, which authorized the jury to find Hanifa guilty of kidnapping with bodily injury. The trial court did not err when it denied the motion for directed verdict of acquittal since the evidence was sufficient to authorize a rational trier of fact to find Hanifa guilty beyond a reasonable doubt. *Cowards v. State*, 266 Ga. 191 (1) (465 SE2d 677) (1996). Furthermore, the evidence summarized above was sufficient to authorize a rational trier of fact to find both appellants guilty of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hanifa contends the admission of her co-defendants' statements violated the holding in *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). At trial, co-defendant Kirk's incriminating statement to a police youth investigator looking for Nekita was presented to the jury through the testimony of the youth

investigator. The contents of the statements made separately by Kirk and co-defendant Kenner to a police detective were read to the jury by the assistant district attorney. In Kirk's statement to the youth investigator, Hanifa was referred to by her nickname as being present in the apartment when Nekita was brought as a gift to Hanifa, and when Kirk recalled that she had whispered to the victim to act like she was being hurt when she was struck by Kirk and Hanifa. While reading the remainder of the statement, the investigator substituted "someone" or "others" when the statement referred to Hanifa or Kenner. In her reading of Kirk's statement to the police detective, the ADA referred to Hanifa by her nickname when describing the victim's arrival at the apartment, and thereafter substituted "someone" or "others" when the statement referred to Hanifa or Kenner. In reading Kenner's statement, the ADA referred to Hanifa by her nickname when relating that the victim had been slapped and hit in the face upon her arrival at the apartment. The ADA then used "someone," "someone else," and "they" when describing Hanifa's and Kirk's continuing physical abuse of the victim. In the typewritten versions of each statement introduced into evidence, the typed names of the confessor's co-defendants were crossed out and the substituted phrase ("someone," "someone else," "others," "they," etc.) was handwritten above the deletion.

In *Bruton*, the U. S. Supreme Court ruled that the admission of the confession of a non-testifying co-defendant inculpating the defendant deprived the defendant of the right to cross-examine witnesses, included in the Sixth Amendment right to confront witnesses, even when the admission of the co-defendant's statement was accompanied by an instruction limiting the jury's consideration of the confession to the case against the confessing co-defendant.[3] The court based its holding on the recognition that deliberately spreading before the jury the "powerfully incriminating extrajudicial statements of a co-defendant" untested by cross-examination was a threat to a fair trial as it presented a situation "in which the risk that the jury will not, or cannot, follow instructions [to consider the confession only against its maker] is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id., 391 U. S. at 135-136.

The Supreme Court limited *Bruton* somewhat in *Richardson v. Marsh*, 481 U. S. 200, 211 (107 SC 1702, 95 LE2d 176) (1987), when it placed outside the scope of *Bruton* the admission of a nontestifying

---

[3] Appellant Hanifa had the opportunity to cross-examine her co-indictees who testified against her; her assertion of a *Bruton* violation is limited to the admission of the statements of Kenner and Kirk, her two co-defendants at trial, neither of whom was subject to cross-examination by Hanifa since neither of them testified at trial.

co-defendant's statement redacted "to eliminate not only the defendant's name, but any reference to his or her existence[,]" when accompanied by proper limiting instructions. The court expressly left for another day the question of the admissibility of a confession in which the defendant's name was replaced with a symbol or neutral pronoun. Id., n. 5. In *Gray v. Maryland*, ___ U. S. ___ (118 SC 1151, 1155, 140 LE2d 294) (1998), the court was faced with the unresolved *Richardson* question in a case where the State introduced the confession of a nontestifying co-defendant which referred directly to the existence of the defendant, but replaced his name with a kind of symbol — "deleted" was substituted for the defendant's name when the statement was read aloud to the jury, and the printed version contained a blank set off by commas where the confessing co-defendant had used the defendant's name. The court held that "redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal result." Id., 118 SC at 1156. The court conceded that the Confrontation Clause is not violated by "those statements that incriminate inferentially . . . statements that did not refer directly to the defendant himself and which become incriminating 'only when linked with evidence introduced later at trial' [cit.]," but determined there is a constitutional problem with "statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." Id., 118 SC at 1157.

The State, citing *Freeman v. State*, 265 Ga. 709 (1) (462 SE2d 139) (1995), posits that, with the limiting instructions given by the trial court, the co-defendants' incriminating statements were admissible against Hanifa since she had also made an incriminating statement and the three statements were "interlocking." In *Freeman*, we rejected the assertion that *Bruton* was violated by the admission of statements made by nontestifying co-defendants implicating a defendant who had confessed. We stated, "[a] co-defendant's interlocking confession or incriminating statement can be admitted against a defendant who has also confessed when the court gives appropriate limiting instructions, as was done here." Id., 265 Ga. at 711.[4] *Freeman* relied directly on the Supreme Court's plurality decision in *Parker v. Randolph*, 442 U. S. 62 (99 SC 2132, 60 LE2d 713)

---

[4] Upon further reflection, we note that our holding in *Freeman* was internally inconsistent as it held that a co-defendant's statement was admissible *against the defendant* when accompanied by an instruction limiting the jury's consideration of the statement to the case against *the co-defendant*.

(1979); however, the *Parker* plurality's approach was expressly rejected by the Supreme Court in *Cruz v. New York*, 481 U. S. 86 (107 SC 1714, 95 LE2d 162) (1987). In *Cruz*, the court held that the Confrontation Clause bars the admission of a nontestifying co-defendant's confession incriminating the defendant which is not directly admissible against the defendant, even if the jury is instructed not to consider it against the defendant and even if the defendant's own confession is admitted into evidence. Id., 481 U. S. at 193. In *Cruz*, the court adopted the approach espoused by Justice Blackmun in his special concurrence in *Parker*: the introduction of the nontestifying co-defendant's confession constitutes a violation of the Confrontation Clause; however, that violation might be rendered harmless by the introduction of the defendant's interlocking confession. As a result of the Supreme Court's disavowal of the plurality decision in *Parker v. Randolph* and its holding in *Cruz* that the Confrontation Clause is violated by the introduction of a nontestifying co-defendant's incriminating confession, we can no longer endorse those Georgia appellate cases which relied upon the *Parker* plurality or which have held that no *Bruton* violation occurs when testimony presented in a co-defendant's confession is supported by the defendant's own statement. See, e.g., *Freeman*, supra; *Satterfield v. State*, 256 Ga. 593 (351 SE2d 625) (1987); *Allen v. State*, 255 Ga. 513, 516 (340 SE2d 187) (1986); *Tatum v. State*, 249 Ga. 422 (291 SE2d 701) (1982); *Fortner v. State*, 248 Ga. 107 (1) (281 SE2d 533) (1981); *Knowles v. State*, 246 Ga. 378 (4) (271 SE2d 615) (1980); *Casper v. State*, 244 Ga. 689 (1) (261 SE2d 629) (1979); *Hall v. State*, 230 Ga. App. 378 (1) (496 SE2d 475) (1998); *Sawyer v. State*, 217 Ga. App. 406 (1) (457 SE2d 685) (1995); *Kesler v. State*, 215 Ga. App. 553 (1) (451 SE2d 496) (1994); *Yeargin v. State*, 164 Ga. App. 835 (4) (298 SE2d 606) (1982); *Edwards v. State*, 162 Ga. App. 216 (1) (290 SE2d 553) (1982). Following the lead of the U. S. Supreme Court, we hold that, unless the statement is otherwise directly admissible against the defendant, the Confrontation Clause is violated by the admission of a nontestifying co-defendant's statement which inculpates the defendant by referring to the defendant's name or existence, regardless of the existence of limiting instructions and of whether the incriminated defendant has made an interlocking incriminating statement. A co-defendant's statement meets the Confrontation Clause's standard for admissibility when it does not refer to the existence of the defendant and is accompanied by instructions limiting its use to the case against the confessing co-defendant. The fact that the jury might infer from the contents of the co-defendant's statement in conjunction with other evidence, that the defendant was involved does not make the admission of the co-defendant's statement a violation of

the Confrontation Clause. *Richardson v. Marsh*, supra, 481 U. S. at 211.

In the case at bar, the statements of the non-testifying co-defendants admitted into evidence identified Hanifa by nickname as a person at the scene of the crimes and as an active participant in the initial assault of the victim. Thereafter, her participation was described as having been done by "someone" or "others" or "they," while her co-indictees who were not on trial with her were identified by name. While the number of participants in the crimes made it less clear that the generic terms referred to Hanifa, the jury was notified by the use of the terms and by the deletions on the typewritten statements that a name had been redacted, making it similar to *Bruton*'s unredacted confessions so as to be a constitutional violation. Id., 118 SC at 1156. Upon review of the entire trial transcript, however, we conclude that the erroneous admission of the non-testifying co-defendants' statements incriminating Hanifa was not sufficiently harmful to authorize reversal of her convictions. In her statement, Hanifa admitted her presence at the scene, a limited participation in the assaults, and knowledge of the criminal acts of others inflicted upon the victim in her presence and without her objection. The testimony and statements of her co-indictees who testified at the trial and who were subject to cross-examination made it clear that Hanifa was an active participant in the numerous assaults on and the ultimate death of the victim. Due to the sheer number of persons engaged in the criminal behavior, and considering that the statements of Hanifa and her co-defendants were admitted into evidence early in the trial (via the testimony of the first two witnesses), and the admission of their statements preceded the testimony of the co-indictees who identified Hanifa by name, it is less likely that the jury immediately identified Hanifa as the generic "someone," "others," and "they" referred to in the statements of her co-defendants and disregarded the trial court's instructions to consider the co-defendants' statements only against the makers. See *Short v. State*, 256 Ga. 165 (5) (345 SE2d 340) (1986). Cf. *Gray v. Maryland*, supra; *Cruz v. New York*, supra.

3. Contending that her statement to police was not freely and voluntarily given, Hanifa complains that the trial court erroneously admitted it into evidence. Since Hanifa was a juvenile when she made the incriminating statement to police, the trial court correctly considered the nine factors set forth in *Riley v. State*, 237 Ga. 124 (226 SE2d 922) (1976),[5] in determining whether Hanifa made a

---

[5] The court is to consider the accused's age and education; the accused's knowledge of the substance of the charges and the nature of her right to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the interrogation took place before or after formal charges had been filed;

knowing and intelligent waiver of constitutional rights when she gave the incriminating statement. After conducting a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the trial court found that Hanifa had been advised of her rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), that she understood them and voluntarily waived them, and gave her statement freely and voluntarily without hope of benefit. The trial court's decision was supported by evidence that Hanifa's mother had accompanied her to the police station, had signed the waiver of rights form, and had been present during the three and one-half-hour interrogation; that Hanifa was able to read and write and understood the English language; and that she had been informed she was a suspect in a murder investigation. Since the evidence supports the trial court's determination that the statement was voluntarily given, the trial court did not err in ruling in favor of the admissibility of the statement. *Yorker v. State*, 266 Ga. 615 (4) (469 SE2d 158) (1996).

Hanifa also complains that the authorities violated OCGA § 15-11-19 (a) (3) because they failed to bring her before the juvenile court or to contact a juvenile intake officer. The statute's requirements are directed at persons "taking a child into custody. . . ." OCGA § 15-11-19 (a). Even assuming that the juvenile's appearance with her mother at the police homicide offices to give a statement was the equivalent of officers taking her into custody, the violation of the Juvenile Code does not render the incriminating statement per se inadmissible. *Lattimore v. State*, 265 Ga. 102 (2) (b) (454 SE2d 474) (1995).

4. The trial court denied Hanifa's motion to sever her trial from that of her co-defendants, a ruling with which Hanifa takes issue on appeal. Absent an abuse of discretion, the trial court's decision not to sever the trials of co-indictees in a capital case in which the death penalty is not sought is not reversible error. *Davis v. State*, 266 Ga. 801 (3) (471 SE2d 191) (1996). Hanifa had the burden to make a clear showing that a joint trial was prejudicial and resulted in a denial of due process. *Dennard v. State*, 263 Ga. 453 (5) (435 SE2d 26) (1993). She maintains that she and co-defendant Kenner presented antagonistic "insanity/diminished capacity/mental defect" defenses; that similar transaction evidence was admitted against Kenner; and that the number of co-indictees and their statements and/or testimony created confusion. That the jury acquitted Hanifa on two counts and found her guilty but mentally ill on the remaining seven; acquitted

---

the methods of interrogation used and the length thereof; whether the accused had previously refused to give a voluntary statement; and whether the accused repudiated her extrajudicial statement at a later date.

Kirk on six of nine counts; and found co-defendant Kenner guilty but mentally ill on eight of the nine charges suggests that the jury was not confused by the number of co-defendants and that any purported tension between the defenses presented by the co-defendants did not result in harm to Hanifa. We cannot say the trial court abused its discretion in failing to sever the trials.

5. Hanifa contends the trial court erred when it limited the jury's consideration of her affirmative statutory defense of coercion to simple battery, a charge included in the count of the indictment alleging aggravated assault. OCGA § 16-3-26 provides: "A person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." The defendants submitted a written request to charge on coercion. However, " '[a]n affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it.' [Cit.]" *Chandle v. State*, 230 Ga. 574 (3) (198 SE2d 289) (1973). In her statement admitted into evidence, Hanifa admitted only that she had committed simple battery, i.e., she told the investigator she had slapped the victim. By definition, then, the defense of coercion was applicable only to that included charge, making correct the trial court's jury instruction limiting the applicability of the defense, and the trial court did not err in so limiting the jury's consideration of it.[6]

6. Lastly, Hanifa contends the trial court committed reversible error when the court suspended the State's closing argument, left the bench, and returned some time later to inform counsel and their clients that the trial judge had been to "visit with the jury" whose condition he described as "fragile."[7] Hanifa maintains the trial judge

---

[6] We note further that, at the charge conference, the trial court read aloud its proposed introductory remarks with regard to coercion: "each of the defendants contends that he or she is not guilty of any offense alleged in this indictment. To count seven and only to count seven, the defendants Kirk and Hanifa, and only those two defendants, have filed an affirmative defense of coercion. This defense is limited to the lesser included offense of simple battery." The trial court then addressed counsel: "Is that what y'all told me?" Counsel for Kirk replied affirmatively. There was no verbal response from Hanifa's trial counsel. While not necessary to the decision today, it is possible that, had it been error to have limited the jury's consideration of coercion, it would have been error induced by counsel's unreported earlier remarks to the trial court and trial counsel's failure to respond to the trial court's direct inquiry.

[7] The trial transcript reveals that the trial court resumed the bench and announced that he had gone "to visit with the jury" to which the ADA responded "What?" The trial judge repeated that he had gone to visit with the jury "and you just need to be aware of their condition right now . . . I'm just telling you that the jury is very fragile. So I'm not telling you how to do your job. I'm just making that observation. That's the reason I stopped. And I have never before in my history on the bench interrupted a final argument for that reason. And so I didn't do that without some thought and without what I thought was a reason for doing

engaged in an improper ex parte communication with the jury and his remarks to the jurors constituted an improper judicial comment on the evidence.

Within the Georgia constitutional right to the courts[8] is a criminal defendant's "right to be *present*, and see and hear, *all the proceedings* which are had against him on the trial before the Court." *Wade v. State*, 12 Ga. 25, 29 (1852). See *Martin v. State*, 51 Ga. 567, 568 (1874). A colloquy between the trial judge and the jury is a part of the proceedings to which the defendant and counsel are entitled to be present. *Seay v. State*, 111 Ga. App. 22 (3) (140 SE2d 283) (1965).

> Unquestionably the trial judge should not in any manner communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial; and the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused . . .; and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial. . . .

*Miller v. State*, 13 Ga. App. 440 (2) (79 SE 232) (1913). See also *Waldrip v. State*, 266 Ga. 874 (2) (471 SE2d 857) (1996); *Logan v. State*, 266 Ga. 566 (2) (468 SE2d 755) (1996). We state again: "[a]ll communications with the jury are to be discouraged except in open court with all persons present. . . ." *Berryhill v. State*, 235 Ga. 549 (12) (221 SE2d 185) (1975). See also *Waldrip*, supra; *Logan*, supra.

Looking at the facts presented by the case at bar, we conclude that Hanifa waived her right to appellate review of this issue by failing to voice an objection or seek a mistrial after being informed by the trial judge, prior to the return of the jury's verdicts, of his visit with the jury. *Thacker v. State*, 226 Ga. 170 (11) (173 SE2d 186)

---

it. And I'm communicating that to you without further comment." Counsel for Hanifa's co-defendants then moved for a mistrial based on what they believed were inaccurate statements made earlier by the ADA in her closing argument concerning the sentence imposed on one of the co-indictees who had testified on behalf of the State. The trial court denied that motion for mistrial and suggested the ADA correct the mistaken impression the jury might have gotten from her argument.

[8] Art. I, Sec. I, Par. XII of the Georgia Constitution provides: "No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."

(1970). Upon being told of the occurrence, a motion for mistrial is a proper manner for objecting. *Seay v. State*, supra, 111 Ga. App. 22 (3); *Miller v. State*, supra, 13 Ga. App. at 443. See also Ludington, "Post-retirement Out-of-Court Communications between Jurors and Trial Judges as Grounds for New Trial or Reversal in Criminal Cases," 43 ALR4th 410, § 68 (a); Allen, "Communication Between Court Official and Jurors in Criminal Trial as a Ground for Mistrial or Reversal — Post-*Parker* Cases," 35 ALR4th 890. We note that in *Hopson v. State*, 116 Ga. 90 (42 SE 412) (1902), this Court stated a defendant may complain of the trial court's communication with the jury outside the presence of the defendant and defense counsel after verdict, "notwithstanding knowledge thereof by him or his counsel while the trial was in progress." Each of the cases cited in support of the proposition involved a judge/jury communication whose contents were known to the appellate court (e.g., jury recharge). The case at bar differs because it involves a judge/jury communication whose contents are not on the record, but which would have been placed on the record had the defendant voiced an objection upon being made aware of the occurrence of the communication. The contents of the communication are necessary to determine whether the trial court's erroneous communication with the jury constitutes harmful or harmless error. See *Morris v. State*, 257 Ga. 781 (4) (364 SE2d 571) (1988) (where court could not find harmless error); *Battle v. State*, 234 Ga. 637 (217 SE2d 255) (1975) (where reviewing court found that the defendant was not affected by the communication); *Hurston v. State*, 206 Ga. App. 570 (426 SE2d 196) (1992) (where appellate court found that the contents of the communication "did not materially affect the case"); *Recoba v. State*, 179 Ga. App. 31 (345 SE2d 81) (1986) (where communication was "of a presumptively harmless character."). Accordingly, we endorse the *Thacker* court's holding that a defendant waives appellate review of an allegedly improper judge/jury communication when, prior to verdict, defendant is aware of the communication and fails to voice an objection. *Thacker v. State*, supra, 226 Ga. 170 (11).

7. Kirk, convicted of malice murder, asserts that her motion for directed verdict of acquittal should have been granted because the testimony of her co-indictees/accomplices was not corroborated, as required by OCGA § 24-4-8.[9] An accomplice's testimony as to the identity and participation of the defendant on trial must be corroborated. *Kesler v. State*, 249 Ga. 462 (2) (291 SE2d 497) (1982). Where, as here, more than one accomplice testifies at trial, the testimony of

---

[9] OCGA § 24-4-8 states that, in a felony prosecution, the testimony of a single witness is not sufficient to establish a fact where the only witness is an accomplice. However, "corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . ."

one accomplice may be corroborated by the testimony of the others. *Eubanks v. State*, 240 Ga. 544 (1) (242 SE2d 41) (1978). One accomplice stated that Kirk had assisted in holding the victim's body while she drowned; another testified that Kirk was one of two persons who had held the victim's head under water during the drowning. Kirk herself told investigating officers that she had held the victim's hand during the drowning. The accomplice's testimony concerning Kirk's participation in the killing of the victim was sufficiently corroborated to authorize the denial of the motion for directed verdict of acquittal. Id.

8. Kirk also asserts that the State failed to prove she had the requisite intent to harm the victim. "[C]riminal intent may be inferred from conduct before, during, and after the commission of the crime. [Cit.]" *Sands v. State*, 262 Ga. 367 (2) (418 SE2d 55) (1992). While presented with some evidence that Kirk participated in the crimes against the victim only because she feared co-indictee/ring-leader Dunnigan, the jury also had before it evidence that Kirk had assaulted the victim when Dunnigan was not present and had actively participated in the group's various attempts to kill the victim. Thus, there was evidence of Kirk's conduct from which the jury could infer that she had the intent to harm the victim.

*Judgments affirmed with aggravated assault conviction and sentence vacated in Case No. S98A0629. All the Justices concur.*

DECIDED SEPTEMBER 21, 1998.

*Webb, Stuckey & Lindsey, Jonathan J. Wade, Henry C. Collins,* for appellant (case no. S98A0628).

*David J. Farnham,* for appellant (case no. S98A0629).

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, David E. Langford, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Deborah L. Gale, Assistant Attorney General,* for appellee.