## S03A0751. INGRAM v. THE STATE.
### (586 SE2d 221)

SEARS, Presiding Justice.

Appellant Lonnie Ingram appeals his conviction for murder and related crimes.[1] Finding that the evidence supports appellant's convictions, and finding no merit to appellant's claims of error regarding certain evidentiary matters, we affirm.

In June 1986, the body of Dennis Guittar was found floating in the Etowah River. The victim's body was identified from an acrylic plate that had been placed in his skull years earlier following an unrelated accident. An autopsy revealed that the acrylic plate had been fractured into several pieces, as had the area of skull located behind the plate. The cause of death was identified as blunt force

---

[1] The crimes occurred on June 2-3, 1986, and appellant was indicted on August 11, 2000, on charges that included murder, two counts of felony murder, robbery, and aggravated battery. Trial was held August 19-23, 2002, and appellant was found guilty of felony murder during the commission of a robbery and felony murder during the commission of an aggravated battery. The underlying felonies merged by operation of law. Appellant was sentenced to life in prison on one count of felony murder. The alternative felony murder conviction was treated as surplusage and was vacated by operation of law. Appellant erroneously filed a notice of appeal with the Court of Appeals on September 20, 2002, and filed an amended notice of appeal with this Court on December 12, 2002. The appeal was docketed on February 4, 2003, and submitted for decision without oral argument on March 31, 2003.

trauma to the head and/or drowning.

Police interviewed three individuals who had seen appellant, appellant's ex-wife, co-defendants Pilgram and Jones, and the victim at a tavern on the night the victim disappeared. Appellant and his co-defendants gave statements to police admitting they were at the tavern on that particular night, but they denied having socialized with the victim. A fourth individual, Duncan, told police he had ridden in a car with the victim, appellant, and the co-defendants on the night the victim disappeared, and that the victim had been run over by a car. Finally, witness Ross contacted police and said that he had overheard appellant describe how he had helped to forcibly rob the victim and then dispose of the body after one of the co-defendants had beaten the victim to death.

In 1992, co-defendant Pilgram told a GBI agent that on the night in question, he was with appellant when the victim was beaten and placed in a car trunk, driven to a nearby bridge and tossed into a river. Pilgram showed the agent where the body had been dumped; the location corresponded to the place where the victim's body had been discovered.

In 1998, police interviewed appellant's current wife, Royer, who said appellant told her that he had killed a man on June 2, 1986. Appellant told Royer that he had beaten the victim to death, that the body was dumped into a river, and that appellant's former wife had helped him conceal the crime by burning his bloodied clothes. Appellant's daughter told police that one night in early June 1986, she had seen blood on her father's clothing and had watched her mother help appellant burn his clothes. Appellant later told his daughter the details of the murder. Appellant's daughter gave two statements to police, both of which were substantially the same.

Appellant, Pilgram, and Jones were jointly indicted for murder. At trial, witness Ross admitted that he had met a GBI agent in 1986, but denied having told the agent that he had information regarding the murder. Appellant's current wife also testified and admitted that she had given a statement to police, but claimed she was intoxicated at the time. Appellant's daughter testified that both of her statements to the police were lies that she had concocted because she was angry with her father. All three witnesses were cross-examined with their earlier statements to police implicating appellant. Appellant was found guilty of felony murder; co-defendants Pilgram and Jones were acquitted of all charges.

1. The evidence was sufficient to lead a rational trier of fact to conclude that appellant was guilty beyond a reasonable doubt of the

crimes for which he was convicted.[2]

2. Contrary to appellant's claim, the trial court did not err in admitting into evidence the redacted statements of co-defendants Pilgram and Jones. Prior to trial, appellant and his co-defendants moved to exclude the statements, alleging that their admission would violate the Confrontation Clause of our State and Federal Constitutions.[3] However, the Confrontation Clause is not violated when the statement of a non-testifying co-defendant is admitted into evidence, provided that the statement is redacted so that (1) it does not refer to the defendant's name or existence; and (2) it is accompanied by instructions from the trial court limiting the statement's use to the case against the co-defendant.[4]

Here, the trial court properly redacted the non-testifying co-defendants' statements to remove references to appellant's name and existence. Throughout the statements, non-specific and gender-neutral pronouns such as "another person," "others" and "someone" were substituted for all references to appellant and his co-defendants.[5] The mere fact that the jury might have inferred from the contents of the co-defendants' properly redacted statements, in conjunction with other evidence, that appellant was involved in the crimes at issue does not render the statements' admissions violative of the Confrontation Clause.[6]

Finally, the record establishes that the trial court gave a proper limiting instruction to the jurors, informing them that the voluntary statement of a co-defendant could be considered only against the particular defendant who made the statement. It follows that the trial court did not err by admitting into evidence the properly redacted statements of appellant's co-defendants.

3. The trial court did not err by admitting the prior inconsistent statements of appellant's wife and witness Ross.[7] The statements

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Contrary to appellant's claim, there was sufficient evidence to show that: (1) he committed aggravated battery by striking the victim with a solid object, as the evidence showed the acrylic plate in the victim's head had been shattered; and (2) he used force to rob the victim, as evidence showed a belt buckle and money were taken from the victim during the assault.

[3] See *Bruton v. United States*, 391 U. S. 123, 126 (88 SC 1620, 20 LE2d 476) (1968).

[4] *Hanifa v. State*, 269 Ga. 797, 803 (505 SE2d 731) (1998).

[5] Compare *Hanifa*, 269 Ga. at 804 (describing improperly admitted statements made by co-defendants that first referred to appellant by her nickname and thereafter referred to her by use of a pronoun, while all other persons mentioned in the statements were referred to by their names).

[6] Id., 269 Ga. at 803-804; see *Richardson v. Marsh*, 481 U. S. 200, 211 (107 SC 1702, 95 LE2d 176) (1987).

[7] Appellant failed to object at trial to the admission of evidence relating to his daughter's prior inconsistent statement for impeachment purposes and as substantive evidence against him. Hence, that particular claim will not be considered on appeal. *Quintanilla v. State*, 273 Ga. 20, 21 (537 SE2d 352) (2000).

were admitted on the State's motion when appellant's wife and Ross gave testimony that contradicted their prior statements to investigating officers. The prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible both to impeach the witness and as substantive evidence.[8]

4. The trial court did not abuse its discretion by permitting the State to treat witness Ross as a hostile witness by asking leading questions. When he took the stand, Ross recanted the substance of his earlier statement to police and demonstrated an unwillingness to be cooperative or forthcoming in response to the State's questioning regarding his earlier statement.[9]

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003.

*Christina Stahl, Janice V. Dorris*, for appellant.

*T. Joseph Campbell*, District Attorney, *Thurbert E. Baker*, Attorney General, *Jason C. Fisher*, Assistant Attorney General, for appellee.

---

[8] *Holiday v. State*, 272 Ga. 779, 780-781 (534 SE2d 411) (2000); *Gibbons v. State*, 248 Ga. 858, 863-864 (286 SE2d 717) (1982).

[9] See *Thomas v. State*, 238 Ga. App. 42, 43 (517 SE2d 585) (1999); Milich, Georgia Rules of Evidence, § 13.3, p. 223 (2nd ed. 2002). Appellant's claim that the trial court erred by granting the State's request to treat appellant's wife and daughter as hostile witnesses is not supported by the record, as no request was made to treat either of those witnesses as hostile.