### A09A1924. GOBER v. THE STATE.
(684 SE2d 675)

BLACKBURN, Presiding Judge.

Following a jury trial, Robert Mack Gober appeals his conviction for armed robbery[1] and theft by receiving,[2] arguing that the trial court erred in admitting a prior inconsistent statement of a key witness and in allowing the State to treat two of its other witnesses as hostile. Discerning no error, we affirm.

Construed in favor of the verdict, *Davis v. State*,[3] the evidence shows that early in the afternoon of February 13, 1996, Gober and three compatriots received two stolen vehicles (a white Dodge and a green Plymouth), which they intended to use in an armed robbery of a bank. The foursome drove the white Dodge to one bank and waited in the parking lot, but left when approached by a bank employee who found their behavior suspicious. With Gober as driver, they then traveled to SouthTrust Bank, where the three passengers donned masks and, pointing guns at the tellers, entered the bank with loud demands for money. After stealing over $8,000, the threesome returned to the white Dodge and made their escape with Gober as the getaway driver, only to have one of the bags of money explode and emit red dye and tear gas. Throwing the offending bag from the car, the four men soon stopped and exited the car, running to the green Plymouth and escaping with the remainder of the money, much of which was now covered with red dye.

The men arrived at an apartment complex, where Gober approached an acquaintance with the request to use an apartment to clean the red dye off their hands and faces. The acquaintance acquiesced, and after the four men washed their hands and faces, they spilled out the red-dyed money onto the apartment floor and used the apartment's patio grill to burn it.

Two days later, police stopped the green Plymouth at a roadside check, only to have its driver speed away in the vehicle. Police soon apprehended the driver, who was one of the three gunmen who had entered the bank.

Eventually, the other three men were apprehended, and all four were indicted for armed robbery, theft by taking (two counts), and

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-8-7 (a).

[3] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

theft by receiving (two counts). Two of the gunmen pled guilty before trial, and Gober and the third gunman were tried before a jury.[4] The third gunman pled guilty during jury deliberations. Acquitting Gober of the theft by taking charges, the jury found him guilty of armed robbery and of theft by receiving (both counts). Following the denial of his motion for new trial, Gober appeals.

1. Gober's first two enumerations of error concern the court's decision to admit into evidence a videotape of a police interview with Gober's acquaintance, who identified Gober and others of the foursome as coming to the apartment complex and who told police of the foursome's washing off the red dye, their dumping the money onto the apartment floor, their burning the red-dyed money in the grill, and their confessing to the robbery of the bank and to the theft of the cars. Gober claims that at trial, the acquaintance's testimony did not contradict any statements made in the interview, thus precluding admission of the interview as a prior inconsistent statement. He further claims that because the acquaintance repeatedly denied any memory of the events, Gober was denied his Sixth Amendment right of confrontation. See *Crawford v. Washington*.[5] We hold that both enumerations lack merit.

(a) *The videotape was properly admitted as a prior inconsistent statement.* Contrary to Gober's argument, the acquaintance did not simply claim at trial that he did not remember any of the events of February 13, 1996. Although he did not remember many things, in his testimony he did expressly deny (i) that the foursome discussed with him that they had just robbed a bank, (ii) that they dumped the red-dyed money on the apartment floor, (iii) that they burned the money in the apartment's patio grill, and (iv) that they identified which bank they had robbed, and he further denied that he had identified the men to the police or that he was even at the apartment complex on the day in question. Inasmuch as this testimony directly contradicted the statements he made in his videotaped statement to police, that videotape was admissible as a prior inconsistent statement and could be used as substantive evidence. *Robinson v. State*[6] ("the prior inconsistent statement of a witness who appears and testifies is admissible, not just for impeachment purposes, but as substantive evidence"). See *Ingram v. State*;[7] *Morris v. State*.[8]

---

[4] The first trial resulted in a conviction of Gober, which was vacated when the trial court granted Gober's motion for new trial. This appeal is from the second trial.

[5] *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

[6] *Robinson v. State*, 271 Ga. App. 584, 586 (1) (610 SE2d 194) (2005).

[7] *Ingram v. State*, 277 Ga. 46, 48-49 (3) (586 SE2d 221) (2003).

[8] *Morris v. State*, 228 Ga. App. 90, 90-91 (1) (491 SE2d 190) (1997).

Compare *Hill v. State*[9] (prior statement not admissible where prosecution failed to ask witness specific questions from that statement that the witness denied). Moreover, the acquaintance, who was undisputedly a reluctant witness, testified that he did not remember giving the statement to police. "If a reluctant witness testifies that he does not remember whether or not he made a prior statement, the [S]tate is then entitled to introduce the prior statement as inconsistent with the in-court testimony of the witness." *Green v. State*.[10] See *LeBlanc v. State*.[11]

(b) *Gober was not denied his right of confrontation.* Citing *Gay v. State*,[12] Gober claims that he was effectively denied his right to confront the acquaintance because the acquaintance initially sought to invoke his Fifth Amendment privilege (which the court held was unavailable) and then repeatedly answered that he did not remember the events in question. But the acquaintance not only gave substantive answers to other questions posed by the State, he responded to several of Gober's own cross-examination questions with answers such as that he (the acquaintance) lived with his grandmother, that he was not at the apartment complex on the date in question, that he loved playing basketball and other sports, and that he did not know Gober. Thus, unlike *Gay*, the witness did not completely refuse to testify, which wholly precluded the defendant in *Gay* from any cross-examination regarding the inconsistent statement. Id. See also *Soto v. State*.[13] Accordingly, Gober was afforded his Sixth Amendment right to confrontation. See *Robinson*, supra, 271 Ga. App. at 587 (2).

2. Gober's third enumeration of error is that the trial court erred in allowing the State to treat the two gunmen (who had earlier pled guilty) as hostile witnesses, which denied him his right to a thorough and sifting cross-examination of the witnesses. This enumeration fails.

Where a witness demonstrates a reluctance to tell what he knows about a crime, the trial court has

> great latitude to permit the assistant district attorney to treat [the witness] as a hostile witness and propound leading questions. Whether leading questions are permitted is within the trial court's discretion, and exercise of that

---

[9] *Hill v. State*, 250 Ga. App. 897, 902 (1) (553 SE2d 289) (2001).

[10] *Green v. State*, 298 Ga. App. 17, 21 (1) (679 SE2d 348) (2009).

[11] *LeBlanc v. State*, 283 Ga. App. 434, 437 (3) (641 SE2d 646) (2007).

[12] *Gay v. State*, 279 Ga. 180, 182 (2) (611 SE2d 31) (2005).

[13] *Soto v. State*, 285 Ga. 367, 370 (2) (b) (677 SE2d 95) (2009).

> discretion will not be interfered with by the appellate courts unless the discretion is abused.

(Citations and punctuation omitted.) *Knight v. State*.[14] See *Ingram*, supra, 277 Ga. at 49 (4). Here, both gunmen refused to answer any questions on Fifth Amendment grounds, even though the trial court clearly instructed them that they were not entitled to that privilege in that they had both pled guilty to the subject crimes and had not appealed. The trial court did not abuse its discretion in allowing the prosecutor to treat the witnesses as hostile witnesses and to propound leading questions. See *Culler v. State*;[15] *LeBlanc*, supra, 283 Ga. App. at 437 (3).

Citing *Lingerfelt v. State*[16] and *Greenwood v. State*,[17] Gober argues that allowing the prosecutor here to ask leading questions (where the witnesses simply refused to answer on Fifth Amendment grounds) violated his right to confront witnesses in that the "effect of this prosecutorial procedure was to place before the jury, through the questions asked, the content of the previous testimony of the witness without the benefit of cross examination by the appellant." *Lingerfelt*, supra, 235 Ga. at 140. See also *Lawrence v. State*.[18]

However, in *Cates v. State*,[19] the Supreme Court of Georgia carved out an exception to the *Lingerfelt* doctrine, holding that the trial court could allow a prosecutor to ask such leading questions of a witness who refused to testify where (i) the trial court had properly found that the witness had no right to claim a Fifth Amendment privilege (because he had already been convicted for his participation in the same crime and no appeal had been pursued), and (ii) defense counsel had available to him or her the witness's version of the crime and therefore could also ask leading questions that showed inconsistencies or tended to exculpate the appellant. "We see no error in allowing the prosecuting attorney to ask leading questions of [the witness] in view of the fact that appellant was afforded the same opportunity." *Cates*, supra, 245 Ga. at 33 (1).

Here, both gunmen had previously pled guilty to their participation in the same crimes of which Gober was accused, and therefore the trial court had properly found they were entitled to no Fifth Amendment privilege. *Cates*, supra, 245 Ga. at 33 (1). Gober's counsel had available to him the testimony of both gunmen from

---

[14] *Knight v. State*, 266 Ga. 47, 49 (4) (b) (464 SE2d 201) (1995).
[15] *Culler v. State*, 277 Ga. 717, 721 (5) (594 SE2d 631) (2004).
[16] *Lingerfelt v. State*, 235 Ga. 139, 140-141 (218 SE2d 752) (1975).
[17] *Greenwood v. State*, 203 Ga. App. 901, 902 (1) (418 SE2d 160) (1992).
[18] *Lawrence v. State*, 257 Ga. 423, 425 (3) (360 SE2d 716) (1987).
[19] *Cates v. State*, 245 Ga. 30, 32-33 (1) (262 SE2d 796) (1980).

Gober's first trial, which he used to Gober's advantage by asking one gunman whether he previously testified that he was not with Gober on February 13, 1996. As with the prosecutor's five questions, this gunman refused to answer Gober's question. As to the other gunman, Gober expressly declined the opportunity to query the witness (after the witness had refused to answer the State's five questions). Thus, with regard to this witness, Gober "was not denied the right of confrontation, he simply did not exercise it." *Hawkins v. State*.[20] See *Green*, supra, 298 Ga. App. at 24 (5).

Finally, we note that after the testimony of each of these gunmen witnesses, the court gave a detailed instruction to the jury that the questions of counsel were not evidence, and that the jury could make no inferences from the witness's refusal to answer questions from the prosecutor or from either of the defendants. Following each such curative instruction, Gober made no motion for mistrial nor otherwise renewed his objections to the testimony. Accordingly, "the issue was not preserved for appeal because [Gober] did not [assert a] motion for mistrial after curative instructions were given." *Fincher v. State*.[21]

Under these circumstances, the trial court did not err in allowing the State to treat the two gunmen witnesses as hostile and to ask them five leading questions each.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED SEPTEMBER 23, 2009.

*Mitchell D. Durham*, for appellant.
*Patrick H. Head, District Attorney, Kathryn E. Cozzo, Dana J. Norman, Assistant District Attorneys*, for appellee.

---

[20] *Hawkins v. State*, 175 Ga. App. 606, 610 (2) (333 SE2d 870) (1985).
[21] *Fincher v. State*, 276 Ga. 480, 482 (3) (578 SE2d 102) (2003).