### A11A1903. ALEXIS v. THE STATE.
(721 SE2d 205)

ELLINGTON, Judge.

A DeKalb County jury found Todd Alexis guilty of two counts of armed robbery, OCGA § 16-8-41 (a); two counts of aggravated assault with intent to rob, OCGA § 16-5-21 (a) (1);[1] and one count of criminal attempt to commit armed robbery, OCGA §§ 16-4-1, 16-8-41 (a). Alexis appeals from the denial of his motion for new trial, contending

---

[1] At sentencing, the court entered an order finding that the convictions for aggravated assault merged with the convictions for armed robbery.

that his trial counsel was ineffective, that the trial court erred in admitting photographic evidence, and that the State failed to prove the venue of one of the armed robberies beyond a reasonable doubt. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record reveals the following relevant facts. At about 11:00 p.m. on September 22, 2008, Alexis and his friends, Christopher Lee and Stephen Wyatte, were driving around in Lee's maroon Buick, talking about robbing someone. They spotted a man walking along the sidewalk on Panola Road near Cavalier Crossing in Lithonia, DeKalb County, and they decided to rob him. Lee pointed a replica of an AK-47 machine gun at the man and said: "Give me everything you've got." Alexis also had a weapon, a black handgun. A third man, Wyatte, stayed in the car. The victim gave the robbers his wallet, credit cards, and $80. At trial, the victim identified Alexis as one of his robbers, and he also identified the car and weapons used in the crime.

Around 11:00 p.m. on September 25, 2008, Alexis, Lee, and Wyatte decided to commit another robbery. They saw a man walking along the sidewalk on DeKalb Medical Parkway in DeKalb County, and Lee parked his car near the man. Alexis and Lee got out of the car, brandishing their weapons. This time Alexis had the AK-47 and Lee, the handgun. The robbers took the victim's wallet, cash, cell phone and other possessions. At trial, the victim identified Alexis as one of the men who robbed him and also identified the car and the weapons used in the crime.

On September 30, 2008, Alexis, Lee, and Wyatte decided to rob a dry cleaner in the Kroger Plaza on North Decatur Road in DeKalb County. In preparation for the robbery, they added a silver 9mm handgun to their arsenal and decided to use T-shirts tied around their faces as masks. Lee parked his car in an adjacent apartment complex, and the three got out of the car with their weapons and masks. They climbed over a fence into the Kroger parking lot whereupon they began casing the dry cleaners in preparation for the robbery.

A uniformed officer testified that, on that same day, he received a call from dispatch advising him that three men with masks and a shotgun had been seen in the adjacent apartment complex walking toward the Kroger. The officer relayed this information to an off-duty officer who was working as a security guard in the Kroger parking lot. The off-duty officer quickly spotted the three men walking between the apartment complex and the dry cleaner, observed them

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

peering through the windows of the dry cleaner, and saw one man holding what appeared to be a weapon with a long barrel. When the off-duty officer ordered the men to stop, they fled toward the apartment complex and got into a maroon Buick. Thereafter, the uniformed officer saw the maroon Buick being driven away and he pursued it into a nearby apartment complex where he and other officers apprehended Lee and Wyatte. Although Alexis escaped, the police later arrested him based upon his co-defendants' having identified him as a participant in the crimes.

Alexis' co-defendants testified against him at trial, contending that Alexis was a willing participant in the two armed robberies of the individual victims and in the attempted armed robbery of the dry cleaner. Alexis' fingerprints were found on Lee's car. The police found Alexis' cell phone in Lee's car, and it contained digital images of him brandishing a silver handgun.

1. Alexis contends the State failed to establish venue beyond a reasonable doubt as to the September 22, 2008 armed robbery. We disagree. The victim of that crime testified that he was robbed while walking along Panola Road near Cavalier Crossing in Lithonia. Both Lee and Wyatte testified that they saw the victim as they were driving down Cavalier Crossing. A DeKalb County police officer testified that he was familiar with the area where Panola Road intersects with Cavalier Crossing, as it was "just up from his job," and he testified that the area is "still in DeKalb County. Lithonia."

"Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt." (Punctuation and footnotes omitted.) *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000). The State may use both direct and circumstantial evidence to establish venue. *Bruce v. State*, 252 Ga. App. 494, 498 (1) (b) (555 SE2d 819) (2001). "Whether the evidence as to venue satisfied the reasonable-doubt standard was a question for the jury, and its decision will not be set aside if there is any evidence to support it." (Punctuation and footnote omitted.) *Bynum v. State*, 300 Ga. App. 163, 167 (4) (684 SE2d 330) (2009).

Here, the testimony of the victim and of Alexis' co-defendants established that the robbery occurred very near, within human sight distances of, the intersection of two specific roads. The testimony of the officer, who was familiar with the area where the roads intersected, established that the area was in DeKalb County. While "area" near an "intersection" is somewhat vague, the jury was nevertheless authorized to conclude that the officer was using the terms in a broad enough sense to encompass the location of the crime, based upon his familiarity with the area. See *Ward v. State*,

270 Ga. App. 427, 428 (606 SE2d 877) (2004) (testimony that an intersection where a crime occurred was within the county was sufficient to prove venue as to that crime beyond a reasonable doubt). See also *Bruce v. State*, 252 Ga. App. at 498 (1) (b) (the jury was authorized to infer that a police officer's statement that "all this" took place within the county was sufficiently precise to describe the crimes alleged under the circumstances). Therefore, we conclude that the evidence was sufficient to prove venue beyond a reasonable doubt as to the September 22, 2008 armed robbery.

2. Alexis contends the trial court erred in admitting State's Exhibits 19 and 19A,[3] which depict Alexis holding a silver handgun, because the photograph used in the exhibits was not sufficiently authenticated and because it was unduly prejudicial.

A party lays a proper foundation for the admission of a photograph by showing that it fairly and accurately represents the object, scene, or person depicted. See *Davis v. State*, 253 Ga. App. 803, 806 (6) (560 SE2d 711) (2002); *Jones v. State*, 161 Ga. App. 218, 218-219 (1) (288 SE2d 293) (1982). "[A]ny witness familiar with the subject depicted can authenticate a photograph; the witness need not be the photographer nor have been present when the photograph was taken." (Footnote omitted.) *Davis v. State*, 253 Ga. App. at 806 (6). "Moreover, the quantum of evidence required to sufficiently identify photographs as true and accurate representations of what they purport to depict is a matter within the discretion of the court, and the trial court's decision will not be overturned absent an abuse of discretion." (Citations and punctuation omitted.) *Wegman-Fakunle v. State*, 277 Ga. App. 198, 199 (1) (626 SE2d 170) (2006).

Both Lee and Wyatte testified that the photograph was, indeed, an accurate depiction of Alexis holding a handgun. This is all that is required to authenticate the photograph; therefore, the trial court did not abuse its discretion in determining that a sufficient foundation had been laid concerning the photograph's authenticity.

Although the photograph was properly authenticated, the court also required the State to show that the photograph was relevant to the issues at trial, and that the probative value of the photograph outweighed any prejudice. "Photographs which are relevant to any issue in the case are admissible even though they may have an effect upon the jury." (Citations omitted.) *Ramey v. State*, 250 Ga. 455, 456 (1) (298 SE2d 503) (1983). "Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is

---

[3] Only State's Exhibit 19A was published to the jury. It is a redacted version of State's Exhibit 19. The court directed the State to crop the original photograph to remove an image on Alexis' shirt which contained the word "Kills."

relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue." (Citation omitted.) *Wolfe v. State*, 273 Ga. 670, 674 (4) (a) (544 SE2d 148) (2001). "The standard of review of the trial court's ruling on a challenge to evidence on the ground that its probative value is outweighed by its tendency to unduly prejudice the jury is an abuse of discretion standard." (Citation omitted.) *Holland v. State*, 221 Ga. App. 821, 825 (3) (472 SE2d 711) (1996). See also *Carroll v. State*, 261 Ga. 553, 554 (2) (408 SE2d 412) (1991).

Alexis' defense at trial was that he was not present during the robberies, that the victims' identification of him was tainted, and that Lee and Wyatte only named him as a participant in the crimes in order to get a favorable plea bargain from the State. The State used the photograph in State's Exhibit 19A to further link Alexis to the crimes, especially the September 30 armed robbery attempt, and to corroborate the testimony of the co-defendants by showing the following facts. The photograph was taken from a single digital image entitled "me," and it depicted Alexis holding a silver handgun. The image was time-stamped "9-13-2008," a few weeks before the robberies. The police found the image stored on two cell phones, a red one and a black one. The red cell phone was removed from Alexis' person when he was arrested. The black cell phone was found in Lee's car during the execution of a search warrant immediately following the September 30 attempted armed robbery. Both cell phones were identified as either belonging to Alexis or having been in his recent possession. Alexis' co-defendants testified that Alexis carried a silver handgun during the September 30 attempted armed robbery, and the silver handgun was admitted into evidence at trial. Lee also identified the silver handgun depicted in State's Exhibit 19A as the one Alexis used in the September 30 crime. Given this evidence, evidence which links Alexis to the crimes and which corroborates the testimony of his co-defendants, the trial court did not abuse its discretion in determining that the photograph's probative value outweighed any prejudicial impact. See *Polke v. State*, 203 Ga. App. 306, 310 (4) (417 SE2d 22) (1992) (a photograph of the defendant found in a house used for trafficking cocaine was relevant as evidence tending to establish that the house was defendant's residence).

3. Alexis contends he received ineffective assistance of counsel at trial because counsel failed to object to alleged hearsay testimony and failed to object to statements made by the prosecutor during closing argument.

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's

performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

(a) Alexis contends that his trial counsel should have objected to the testimony of an investigator from the district attorney's office who stated that Alexis' black cell phone was retrieved from Lee's car pursuant to a search warrant. Alexis argues that, had a hearsay objection been made and sustained, there would have been no physical evidence linking him to the crimes.

Pretermitting whether the investigator's statement was hearsay, counsel's failure to object does not necessarily constitute deficient performance. Had counsel objected, and had the objection been sustained, the prosecution could have recalled to the witness stand the detective who performed the search to clarify where Alexis' black cell phone had been found. The record shows, however, that counsel, during cross-examination of the investigator, opted to emphasize and to exploit the fact that the State did not have an itemized list of the items recovered from Lee's car, that there was no photograph in evidence showing where the phone was found, and that the investigator had no personal knowledge of the search of Lee's car. "Not objecting to testimony but instead subjecting it to cross-examination may be part of a reasonable trial strategy[.]" (Footnote omitted.) *Al-Attawy v. State*, 289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008). By taking this tack, counsel was able to argue at closing: "Wouldn't you think if he had found the cell phones in the car, he would have taken a picture of them? . . . But according to this (indicating [the photographs taken of the search of Lee's car]), they didn't get them out of the car." Given the record in this case, it appears that counsel made a strategic decision on how best to deal with a perceived evidentiary gap concerning Alexis' cell phone. Consequently, counsel's failure to object did not constitute deficient performance. See

*Grier v. State*, 273 Ga. at 365 (4).

(b) Alexis contends that his trial counsel should have objected to statements made by the prosecutor during closing argument that he argues impermissibly bolstered the credibility of Alexis' co-defendants. The prosecutor stated: "And, Ladies and Gentlemen, if I thought for one second that these defendants[,] after the stories that they gave the police[,] were going to come in here and lie to you, they would not have sat on that witness stand. They have nothing to hide at this point."

The prosecutor's remark was made in response to defense counsel's argument that both Lee and Wyatte had given many previous statements to the police before they ultimately pleaded guilty and got "a deal," that those prior statements conflicted with their trial testimony, and that both co-defendants lied at trial, and that their trial testimony was fabricated to suit the prosecution's theory of the case. Specifically, defense counsel argued:

> What reason would we have to believe this story that's been changed so many times? I believe that he told the story [on the witness stand] because that suited the needs of this case. Now he's got his story straight . . . . That's the one they want you to believe. Not these others because that doesn't suit the prosecution's needs.

Read in context, the prosecutor's challenged remarks were not an expression of her personal belief that the witnesses were being truthful; rather, it was her denial of defense counsel's accusation that she would knowingly present perjured testimony. See *Manley v. State*, 284 Ga. 840, 844-845 (2) (b) (672 SE2d 654) (2009) (After defense counsel argued that the State and its witnesses had improperly targeted the defendant and had purposely and wrongfully manipulated the evidence, the State was entitled to respond to these direct accusations of wrongdoing. The Supreme Court ruled that the State's comments did not constitute an opinion about the veracity of these witnesses, but merely urged the jury to make a deduction about their veracity from the evidence presented.). Because the challenged argument is permissible, trial counsel's failure to object to it does not support an ineffective assistance claim. *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008).

Consequently, the trial court did not err in denying Alexis' motion for new trial.

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED DECEMBER 13, 2011.

*Gerard B. Kleinrock*, for appellant.

*Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Assistant District Attorney*, for appellee.

