## A11A2039. ROBINSON v. THE STATE.
(724 SE2d 846)

PHIPPS, Presiding Judge.

A jury found Sherman Robinson guilty of possession of a controlled substance with intent to distribute within 1,000 feet of a public housing project, trafficking in cocaine, possession of a firearm during the commission of a crime, and criminal use of an article with an altered identification mark. Robinson was granted an out-of-time

---

appeal and herein appeals from the denial of his motion for new trial. He contends that the evidence was insufficient to sustain his convictions for possession of a controlled substance with intent to distribute within 1,000 feet of a public housing project, trafficking in cocaine, and possession of a firearm during the commission of a crime;[1] and that his trial counsel rendered ineffective assistance. We find the evidence was sufficient but remand for a hearing on Robinson's claims of ineffective assistance of counsel.

> When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury, not this [c]ourt, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld.[2]

Viewed in the appropriate light, the evidence showed that on March 10, 2006, police officers responded to a report of an assault and robbery of a man who was wandering nude in the streets. They responded to a particular location in a public housing complex that was owned and operated by the government. They encountered the nude man, who showed them to another public housing address. When they arrived, Robinson, his girlfriend and two small children were exiting an apartment, but went back inside as officers approached them; they then came back out within a minute. Robinson and his girlfriend were interviewed on the scene.

The police asked for consent to search the apartment, and the girlfriend, who resided with her children at that apartment, consented. She told one of the officers that a gun was underneath a couch and that drugs were in a bedroom closet. The girlfriend gave a written statement that Robinson had brought drugs and a gun into her apartment that morning, and described how Robinson had forced the man to strip and then kicked him out of her apartment, nude. At trial, however the girlfriend testified that the man had placed the drugs in her apartment the night before.

---

[1] Robinson does not challenge his conviction for criminal use of an article with an altered identification mark.

[2] *Walker v. State*, 290 Ga. App. 749 (1) (660 SE2d 844) (2008) (citations, punctuation and emphasis omitted).

At the time of the incident, the girlfriend thought that Robinson, who had a key to her apartment, was the father of one of her children. The drugs were submitted to a crime lab and later tested positive for 85.02 grams of a mixture of cocaine, with 68.8 percent purity.

1. Robinson challenges the sufficiency of the evidence to sustain his conviction for possession of a controlled substance with intent to distribute within 1,000 feet of a public housing project. He contends that

> [a]lthough the State produced evidence that the offense occurred in "public assistance housing, run by the city and county" and "owned and operated by the government," the State failed to prove that the location was under the jurisdiction of a housing authority, consisted of dwelling units, and consisted of dwelling units occupied by low and moderate-income families.

The record belies these claims.

OCGA § 16-13-32.5 (b) provides:

> It shall be unlawful for any person to manufacture, distribute, dispense, or possess with intent to distribute a controlled substance or marijuana or a counterfeit substance in, on, or within 1,000 feet of any real property of any publicly owned or publicly operated housing project, unless the manufacture, distribution, or dispensing is otherwise allowed by law. For the purposes of this Code section, the term "housing project" means any facilities under the jurisdiction of a housing authority which constitute single or multifamily dwelling units occupied by low and moderate-income families pursuant to Chapter 3 of Title 8.

Contrary to Robinson's contention, evidence that the public housing complex was under the jurisdiction of a housing authority was twice presented at trial. The first instance was when Robinson's girlfriend consented to a search of her residence. One of the officers testified that after consent was obtained, the girlfriend "appeared extremely scared," after he told her that if she was involved with crime she would be put out of her apartment. The officer told her that if she told him the location of any drugs and guns, he would have "no problem going to the Housing Authority and speaking on her behalf. . . ." The second instance was on cross-examination of the officer when he was asked whether he had threatened the girlfriend with being put out of her apartment if she did not cooperate with

him. The officer denied that he had threatened her and testified that because that was an issue about which she was concerned, they discussed it. He testified that he told her "that if there was something in there, it would be a good time to tell me, and if we did find something I'd be more than happy to go before the Housing Authority and testify on her behalf that she did cooperate."

Also contrary to Robinson's contention, the evidence showed that the location consisted of dwelling units. In *Collins v. State*,[3] upon which Robinson relies, we reversed a defendant's conviction for selling cocaine within 1,000 feet of a public housing project because the only evidence concerning the location of where the sale took place was the testimony of a police officer that the sale occurred within 1,000 feet of a "Housing Authority."[4] We recognized that under that evidence alone, the property could have been the administrative offices of the Housing Authority: "Indeed, since Georgia's Housing Authorities Law authorizes housing authorities to demolish or clear buildings in slum areas on property it purchases . . . the property . . . could have been unoccupied altogether with no improvements thereon."[5] Here, however, the evidence showed that the incident occurred in an apartment occupied by one of the trial witnesses.

Finally, contrary to Robinson's contention, the evidence showed that the location consisted of dwelling units occupied by low and moderate income families. Under the Housing Authorities Law,[6] " '[l]ow and moderate income families' means persons and families . . . determined by the authority to require such *assistance* as is made available by this article on account of insufficient personal or family income. . . ."[7] The assistance made available is for safe and sanitary dwelling accommodations available at rents which persons of low income can afford; the assistance is for a public use and for which public money may be spent.[8] Accordingly, in the context of the Housing Authorities Law, public assistance housing denotes housing for low and moderate income families.[9] Here, the girlfriend confirmed that her apartment was "public *assistance* housing, run by the city and county," as compared to merely stating that her apartment was public housing.[10]

---

[3] 278 Ga. App. 103 (628 SE2d 148) (2006).

[4] Id. at 105 (1) (b).

[5] Id.

[6] OCGA § 8-3-1 et seq.

[7] OCGA § 8-3-3.1 (emphasis supplied).

[8] OCGA § 8-3-2.

[9] OCGA §§ 8-3-1; 8-3-2.

[10] See *Mahone v. State*, 296 Ga. App. 373, 374-376 (3) (674 SE2d 411) (2009) (recognizing that a development described by a witness only as a public housing project owned by a city may not fall within the definition of a housing project under OCGA § 16-13-32.5 (b); conviction

Robinson relies on *Johnson v. State*,[11] but that case does not lead us to a different result. There, to establish that the sale of cocaine took place on property located within 1,000 feet of a public housing project, the state relied on the testimony of a special agent from the Georgia Bureau of Investigation.[12] When asked how he knew it was a public housing project, the agent replied that "we just knew . . . it was city owned."[13] There was no evidence that the projects were dwelling units occupied by low or moderate income families, and we reversed that conviction.[14]

Accordingly, Robinson's challenge to the sufficiency of the evidence to sustain his conviction for possession of a controlled substance with intent to distribute within 1,000 feet of a public housing project has no merit.[15]

2. Robinson contends that the evidence was insufficient to sustain his conviction for trafficking in cocaine. He argues that the evidence was insufficient because it consisted only of his girlfriend's handwritten statement which was contrary to her testimony at trial. He further argues that because the evidence was insufficient as to the trafficking in cocaine count, then the conviction for possession of a firearm during the commission of a felony, with the underlying felony as trafficking in cocaine, must also be reversed. Robinson also contends the evidence was insufficient to sustain his conviction for possession of a firearm during the commission of a felony because there was no proof that he was in arms reach of the drugs and gun or possessed them at the same time.

The prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible both to impeach the witness and as substantive evidence of the matter asserted.[16] At trial, the girlfriend testified that the man later found nude on the street had placed the drugs in her apartment the night

---

reversed because the only evidence to establish that the cocaine sale took place on property located within 1,000 feet of a public housing project was testimony from a narcotics investigator that the cocaine buy took place less than 1,000 feet from a government housing development; there was no testimony that the government housing development was the property of a housing authority or that it was occupied by low and moderate income families).

[11] 214 Ga. App. 77 (447 SE2d 74) (1994).

[12] Id. at 80-81.

[13] Id.

[14] Id. at 81.

[15] OCGA §§ 8-3-1; 8-3-2; *Walker*, supra; *Barnett v. State*, 276 Ga. App. 238, 240 (1) (623 SE2d 136) (2005); *Haywood v. State*, 248 Ga. App. 210, 212 (2) (546 SE2d 325) (2001); compare *Williams v. State*, 303 Ga. App. 222, 224 (1) (692 SE2d 820) (2010) (conviction reversed because no evidence was presented establishing that the housing project was publicly owned or operated; nor that the housing project was occupied by low and moderate income families).

[16] *Ingram v. State*, 277 Ga. 46, 49 (3) (586 SE2d 221) (2003); *Eller v. State*, 294 Ga. App. 77, 82 (4) (b) (668 SE2d 755) (2008).

before. But in her prior statement, the girlfriend stated that she had told the police that there "was a gun and some drugs that [Robinson] had brought in the house that morning." In her prior statement, the girlfriend stated that Robinson had pulled a gun on her and hit her a couple of times, and that she was afraid for herself and her children. She stated that the only reason she had not previously reported Robinson, who at the time of the incident had a key to her apartment and was thought to have been the father of her child, was because he had a gun and she did not think he needed to go to jail. The jury was authorized to believe the girlfriend's pre-trial statement rather than her in-court disavowal.[17] Thus, Robinson's contention that the evidence presented was insufficient to sustain his conviction for trafficking in cocaine and consequently, on that basis, his conviction for possession of a firearm during the commission of a felony, is without merit.

Robinson's reliance on *Clyde v. State*,[18] to argue that there was no proof that he was in arms reach of the drugs and gun or that he possessed them at the same time, is also without merit. In *Clyde*, there was no witness statement that the defendant possessed drugs and a gun, and the evidence showed that the items were located in two different places, with no testimony about the distance between the locations.[19] Here, in her prior statement, Robinson's girlfriend stated that Robinson had, that morning, brought into her home a gun and some drugs. Thus the evidence was sufficient for a jury to have found the essential elements of the crime beyond a reasonable doubt.[20]

3. Appellate counsel was appointed after Robinson's motion for new trial was denied. Because Robinson raises issues of ineffective assistance of trial counsel for the first time on appeal, we remand the case for an evidentiary hearing on this claim.[21]

*Judgment affirmed and case remanded. Andrews and McFadden, JJ., concur.*

DECIDED MARCH 2, 2012.

*Jennifer R. Burns*, for appellant.
*Larry Chisolm, District Attorney, Ian R. Heap, Jr., Assistant District Attorney*, for appellee.

---

[17] *Leonard v. State*, 279 Ga. App. 192, 193 (1) (630 SE2d 804) (2006).
[18] 298 Ga. App. 283 (680 SE2d 146) (2009).
[19] Id. at 285 (2).
[20] *Walker*, supra.
[21] See *Potter v. State*, 272 Ga. 430, 432 (3) (530 SE2d 725) (2000).