**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**February 27, 2013**

# In the Court of Appeals of Georgia

A12A2209. HAMLIN v. THE STATE.

R AY, Judge.

A jury convicted Brandon Hamlin of one count of armed robbery[1] and one count of aggravated assault.[2] He appeals from the denial of his amended motion for new trial, contending that there was insufficient evidence to sustain his convictions, that he received ineffective assistance of counsel, and that the trial court erred in its admission of certain evidence. For the reasons that follow, we affirm.

1. Hamlin argues that the evidence was insufficient to support his convictions because no fingerprint evidence linked him to the crimes. He also argues that because

---

[1] OCGA § 16-8-41.

[2] OCGA § 16-5-21.

one of the eyewitnesses who identified him as the perpetrator was in medical distress, the identification was unreliable. These contentions are without merit.

> When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury, not this [C]ourt, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts.[3]

So viewed, the evidence shows that on April 1, 2010, Brad Rogers was employed at a store specializing in vitamins and nutritional supplements. The lone customer in the store was Hamlin. At Hamlin's request, Rogers reached onto a high shelf to retrieve a product. When Rogers turned back toward the cash register, he felt a knife pressed up against his side. Hamlin pushed Rogers against the wall and said, "[T]his is a robbery, I want all your money." Rogers opened the cash register and gave Hamlin about $180, primarily in one- and five-dollar bills. Hamlin then left through the store's back door. An employee of a nearby beauty supply store, who was in the back alley, saw Hamlin running away. Rogers came out the door after him and

---

[3] (Footnote omitted.) *Robinson v. State*, 314 Ga. App. 545, 546 (724 SE2d 846) (2012).

told her, "I just got robbed, I just got robbed." The police arrived quickly and called an ambulance, because they thought Rogers might be having a heart attack. His blood pressure was high, but he did not have a heart attack; the ambulance left while he remained at the store. The beauty store clerk described Hamlin to police as a light-complexioned, heavy-set black man about five feet ten inches tall, wearing sunglasses, a black wool cap, and all-black clothing. A police officer patrolling the area received a radio dispatch with this description. While driving on a road behind the vitamin store, the officer saw Hamlin, whose appearance matched the description, coming out of the woods. The officer stopped to talk with Hamlin, but Hamlin "bolted. He took off just as fast as he could run." The officer arrested him and retrieved the following from Hamlin's person: a folding pocketknife, a knit hat with eyeholes cut out, $180 in primarily $1 and $5 bills, a pair of gloves, sunglasses, a note that said "money now," and a bottle of pills bearing the vitamin store's logo. The officer drove Hamlin back to the vitamin store, where both Rogers and the beauty store employee identified him.

Hamlin contends that the evidence was insufficient to convict him because his fingerprints were not found at the scene and because the eyewitness identifications were not reliable. We disagree. Even absent fingerprint evidence, the jury's verdict

is supported by other evidence, including the eyewitness identifications, the bottle bearing the store's logo, and the cash in the amount and denomination reported stolen.[4] Further, it is well settled that "the determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury."[5] The testimony of a single witness is generally sufficient to establish a fact.[6] Here, two eyewitnesses identified Hamlin as the perpetrator. The evidence was sufficient to sustain the jury's conviction and to exclude every other reasonable hypothesis save for Hamlin's guilt.[7]

2. Hamlin next asserts that his trial counsel was ineffective. To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of

---

[4] *Taylor v. State*, 318 Ga. App. 115, 116 (1) (733 SE2d 415) (2012).

[5] (Citation, footnote, and punctuation omitted.) *Frazier v. State*, 305 Ga. App. 274, 275 (1) (699 SE2d 747) (2010).

[6] Id.

[7] *Nangreave v. State*, __ Ga. App. __ (1) (734 SE2d 203, 205 (1)) (2012).

the trial would have been different.[8] "The likelihood of a different result must be substantial, not just conceivable."[9] We are not required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on one of them, and "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[10] Further, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[11]

(a) Hamlin asserts that his trial counsel was deficient in failing to highlight the fact that Rogers' testimony at trial was that he did not see a knife, in contrast to Rogers' earlier, contradictory statement to police that the knife was five or six inches long with a dark handle. The police found a silver, folding pocket knife on his person when he was arrested.

---

[8] *Strickland v. Washington*, 466 U.S. 668, 694 (III) (B) (104 SC 2052, 80 LE2d 674) (1984).

[9] (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

[10] *Strickland*, supra at 697 (IV).

[11] (Citation and punctuation omitted). *Hill*, supra at 164 (4).

At the motion for new trial hearing, Hamlin's trial counsel testified that he made a strategic decision not to point out any conflicting information about the knife for the jury. He testified that he wanted jurors to focus on Rogers' testimony that he did not see the knife, in hopes that they would not convict Hamlin of armed robbery with a knife.

Decisions regarding the scope of cross-examination, impeachment, and presentation of testimony are matters of trial strategy and will rarely constitute ineffective assistance.[12] "This Court will not, with benefit of hindsight, second-guess defense trial strategies . . . . Absent a strong showing that counsel's actions were not reasonable, we will presume that these strategies were not deficient."[13] In light of trial counsel's testimony, Hamlin has failed to show that the decision not to highlight the discrepancies in Rogers' testimony was unreasonable and amounted to deficient performance.

---

[12] See *Daniels v. State*, 296 Ga. App. 795, 802 (5) (g) (676 SE2d 13) (2009) (scope of cross-examination is a matter of trial strategy); *McMichael v. State*, 305 Ga. App. 876, 878 (700 SE2d 879) (2010) (impeachment of witness is a matter of trial strategy); *Hall v. Terrell*, 285 Ga. 448, 455 (II) (E) (679 SE2d 17) (2009) (decision not to present testimony is a matter of trial strategy).

[13] (Citation and punctuation omitted.) *Raymond v. State*, 298 Ga. App. 549, 550-551 (1) (a) (680 SE2d 598) (2009).

6

(b) Hamlin argues that his trial counsel was ineffective because he failed to elicit testimony from Hamlin's father that he had given Hamlin $140 earlier on the day of the robbery. Hamlin contends that "had the jury known that Defendant already had $140 on his person, the fact that Defendant was found with $180 in his pocket would not have been so damaging."

Hamlin's father testified at the motion for new trial hearing that he told trial counsel he had given Hamlin $140. However, at the same hearing, trial counsel testified that he spoke to Hamlin's father one or more times prior to trial and that he did not recall ever being told that the father gave Hamlin $140. To the extent that their testimony differed, the trial court was entitled to believe the testimony of Hamlin's trial counsel rather than that of Hamlin's father.[14] Having reviewed the record, we conclude that the trial court was authorized to rule that trial counsel was not ineffective.

3. Hamlin argues that the trial court erred in admitting certain physical evidence over his objections.

(a) Hamlin contends that the trial court erroneously admitted the gloves and the "money now" note found on his person, over his relevancy objections, because there

---

[14] *Palmer v. State*, 286 Ga. App. 751, 758 (7) (a) (650 SE2d 255) (2007).

was no testimony indicating that the perpetrator wore gloves or used a note in the robbery.

"Evidence is relevant if it tends to prove or to disprove a material fact at issue, and every act or circumstance which serves to explain or throw light upon a material issue is relevant."[15] Here, the officer testified that when he searched Hamlin, he found the gloves and note on Hamlin's person. A jury could infer that the gloves tend to prove why Hamlin's fingerprints were not found at the scene and that the "money now" note tends to show Hamlin's intent to demand money from the vitamin store employee, regardless of whether he used the note to do so. Even if the items did not reflect upon Hamlin's guilt or innocence, "[i]t is well settled that all of the circumstances connected with an accused's arrest, including any items taken from his person, are admissible as evidence at trial."[16]

(b) Hamlin also argues that the trial court erred in admitting into evidence a photograph showing him standing next to a police car after his arrest. Hamlin's hands

---

[15] (Citation omitted.) *Scales v. State*, 310 Ga. App. 48, 51 (2) (a) (i) (712 SE2d 555) (2011).

[16] (Citations omitted.) *Reese v. State*, 145 Ga. App. 453, 457 (4) (243 SE2d 650) (1978). See also *Davis v. State*, 196 Ga. App. 390, 390 (2) (396 SE2d 301) (1990).

are not visible in the photo, and he argues that this makes him appear to be handcuffed. Hamlin contends that any probative value the photo has was outweighed by the photograph's prejudicial effect.

"Whether to admit evidence is a matter resting on the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue."[17] We review any challenge to evidence on the basis that its probative value is outweighed by its tendency to prejudice the jury for an abuse of discretion.[18] "Photographs which are relevant to any issue in the case are admissible even though they may have an effect upon the jury."[19]

Here, the State showed Rogers the photograph so that he could testify as to whether the photograph "fairly and accurately show[ed Hamlin] as he appeared" on the date of the robbery. Prior to the admission of the photograph and without

---

[17] (Citation and punctuation omitted.) *Alexis v. State*, 313 Ga. App. 283, 286-287 (2) (721 SE2d 205) (2011).

[18] Id. at 287 (2).

[19] (Citations omitted.) *Ramey v. State*, 250 Ga. 455, 456 (1) (298 SE2d 503) (1983).

objection, Rogers testified that when he identified Hamlin as the man who robbed him, that Hamlin was seated in the back of a police car.

Although this Court has found, in somewhat analogous situations, that booking photographs are admissible to show how a defendant appeared at the time of the crime, the probative value of these photographs generally stems from the fact that the defendant's appearance has changed between the time of booking and the time of trial.[20] In the instant case, counsel directs us to no testimony indicating that Hamlin's appearance had changed. In general, however, we have found that "mug shots of a defendant taken after arrest with regard to the crime for which he is currently being prosecuted do not prejudice the defendant."[21]

At the time the photograph was admitted, the jury already knew that Hamlin had been arrested. Further, most jurors likely would assume that the police usually handcuff a person arrested for armed robbery.[22] The jury also had heard, without

---

[20] See, e.g., *Chaney v. State*, 258 Ga. App. 551, 552-553 (4) (574 SE2d 634) (2002).

[21] (Citation omitted.) *Sharpe v. State*, 288 Ga. 565, 567 (4) (707 SE2d 338) (2011).

[22] See *Solis-Morales v. State*, 315 Ga. App. 724, 727, n. 8 (728 SE2d 253) (2012).

objection, Rogers' testimony that when he identified Hamlin as the person who robbed him, that Hamlin was sitting in a police car. Given this testimony and the trial court's proper charge to the jury on the presumption of innocence, we cannot say that Hamlin "has shown any likelihood that he was prejudiced by the [photograph], much less that the probative value of the [photograph] is 'substantially' outweighed by the danger of unfair prejudice."[23] Thus, any error was harmless in light of the overwhelming evidence of Hamlin's guilt.

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[23] (Citation and punctuation omitted.) Id. at 726-727.